MARY A. ACFORD *vs.* AUDITOR OF CAMBRIDGE.

Middlesex.   April 4, 1938. — May 26, 1938.

Present: RUGG, C.J., LUMMUS, QUA, & DOLAN, JJ.

*Pension.   Municipal Corporations*, Pension.   *Fireman.   Words*, "Member."

A member of the fire department of a city, retired in 1932 from active service under G. L. (Ter. Ed.) c. 32, § 80, because permanently disabled by injury received in the performance of duty, still was a "member" of the force and, on his death in 1934 from such injury, his widow while she remained unmarried was entitled to an annuity under § 89 as amended by St. 1933, c. 340.

PETITION for a writ of mandamus, filed on January 7, 1938, in the Supreme Judicial Court for the county of Middlesex.

The case was reported by *Lummus*, J., upon the pleadings and an agreed statement of facts.

*D. H. Fulton*, for the petitioner.

*R. C. Evarts*, City Solicitor, for the respondent.

DOLAN, J.   This is a petition for a writ of mandamus to require the respondent, as auditor of the city of Cambridge, to approve the payment of an annuity to the petitioner, as she is the widow of William H. C. Acford, under the provisions of G. L. (Ter. Ed.) c. 32, § 89, as amended by St. 1935, c. 466.   The case comes before us upon the report, without decision, of a single justice of this court, who stated that, in so far as the case depends upon discretion, he would not deny the writ if the petitioner is otherwise entitled thereto.

The parties have agreed upon the material facts, from which it appears that, on or about July 14, 1932, "William Acford," hereinafter referred to as the deceased, who was theretofore a regular member of the fire department of the city of Cambridge, was retired from active service therein and placed upon the pension roll under the provisions of G. L. (Ter. Ed.) c. 32, § 80.   There was no provision in the order for his pension relative to any further service and no requirement of further service of any kind on his part,

"unless the same be implied or provided by law," and he performed no further service in the department and died on February 22, 1934. It is a fair inference from the agreed facts that the retirement of the deceased from active service was due to permanent disability caused by injuries sustained or illness incurred in the performance of his duty as an active member of the department. The petitioner, his widow and sole dependent, still remains unmarried. It has been determined by a board of physicians appointed under G. L. (Ter. Ed.) c. 32, § 89, as amended by St. 1935, c. 466, that the deceased died from injuries received while in the performance of his duties, which injuries were sustained prior to the date of his being placed on the pension roll. It has also been proved to the satisfaction of the appropriate public authority as provided by law that his death was the natural and proximate result of an accident occurring during the performance and within the scope of his duty, through no fault of his own, as a member of the fire department. The city council of the city of Cambridge passed an order providing for the payment of an annuity of $1,000 to the petitioner so long as she remains unmarried. The order was approved by the mayor on June 30, 1936, but the respondent auditor of the city in question declines to approve the payment of the annuity.

It is the contention of the respondent that the deceased, at the time of his death, was not a member of the fire department within the meaning of G. L. (Ter. Ed.) c. 32, § 89, as amended by St. 1933, c. 340, which was then in force. (See now St. 1935, c. 466; St. 1936, c. 326.) The respondent argues that, as the deceased after his retirement from active service was not subject to recall for further service, as in the case of retired police officers, he ceased upon his retirement to be a member of the department. In making this contention, however, the respondent fails to observe that under the provisions of G. L. (Ter. Ed.) c. 32, § 85, as amended, retired members of a fire department of a town are subject to recall for such service as they may be able to perform in case of emergency. We are of the opinion that it was not the intention of the Legislature so to distinguish

between firemen in cities and those in towns to the prejudice of the former, and that membership within the meaning of § 89 is not to be determined on such a basis. No reason in logic appears to require such a limitation on beneficent legislation, the dominant purpose of which is to compensate the dependents of those within the classification of the statute who die from injuries received in the performance of their duties.

The pertinent provisions of § 89 as amended by St. 1933, c. 340, are as follows: "If a member of the police or fire force of a city . . . is killed, or dies from injuries received, while in the performance of his duty as a member of such force . : . and it shall be proved to the satisfaction of the mayor and city council . . . that such death was the natural and proximate result of an accident occurring during the performance and within the scope of his duty as a member of such force . . . and all members of a board consisting of two physicians designated by the mayor and city council . . . and one physician to be designated by the commissioner of public health shall certify to the city . . . treasurer . . . that the death was the direct result of the said injury, there shall be paid except as hereinafter provided, out of the city . . . treasury . . . to the following dependents of such deceased person the following annuities: To the widow, so long as she remains unmarried, an annuity not exceeding one thousand dollars a year . . . ." Section 2 of St. 1933, c. 340, provided: "This act shall apply to the deaths of policemen and firemen resulting from injuries received on or after January first, nineteen hundred and thirty, but shall not affect any annuity granted under said section eighty-nine prior to the effective date hereof."

The evolution of G. L. (Ter. Ed.) c. 32, § 89, as amended, may be traced through the various enactments of the Legislature, reference to which will be found in a footnote.* The

---

* See St. 1902, c. 437; St. 1924, c. 504, § 3; St. 1928, c. 402, § 1; St. 1929, c. 308, § 1; St. 1930, c. 182, § 1; St. 1930, c. 241, § 1; St. 1932, c. 276; St. 1933, c. 340; St. 1934, c. 343; St. 1935, c. 466; St. 1936, c. 326. Compare G. L. c. 32, § 87, providing for the payment of a lump sum to the personal representatives of certain deceased public officers, since repealed by St. 1930, c. 182, § 5; St. 1920, c. 515, § 1; St. 1923, c. 178; St. 1924, c. 371; St. 1928, c. 402, § 3.

same enactments evidence an increasing recognition of the obligation of the public toward those who enter its service in occupations involving risk of injury and death. Starting with provisions affecting only certain dependents of police officers in cities other than Boston, with grants of annuity in the case of a widow not to exceed $400, by subsequent amendment the benefits of the statute were extended to certain dependents of firemen, and later by other amendments to the dependents of other classes of persons engaged in public service of a hazardous nature, with annuity in case of a dependent widow fixed at not more than $1,000, instead of not more than $400 as provided in the earlier enactments. Under St. 1928, c. 402, in order to entitle dependents to the annuities therein provided for, the fireman must have been killed in the performance of his duty, or have died within six months after the occurrence of injuries so sustained. By St. 1930, c. 241, § 1, the period within which death must occur to bring a dependent within its provisions was extended to one year. The amendment to the statute accomplished by St. 1933, c. 340, in force at the death of the deceased, eliminated any requirement of death resulting from injuries within any given time and provided retroactively that its provisions should apply to death resulting from injuries received on or after January 1, 1930. In this provision we have a clear recognition by the Legislature that in some cases injuries received in the line of duty might not cause death for more than a year after their occurrence, although they would eventually do so, and an intention on its part that the dependents of firemen receiving injuries, in the line of duty, resulting in death after retirement should be protected, as well as those of firemen who were killed instantly or whose deaths from injuries occurred before the mandatory retirement from active service, provided in case of permanent disability as a result of the injuries, took effect under G. L. (Ter. Ed.) c. 32, § 80. It is to be noted that the history of § 80 gives like evidence of an increasing recognition of the duty of society to those who serve it in hazardous public occupations. Like § 89, in its origin § 80 was permissive in its terms, as in St. 1898,

c. 267, and St. 1906, c. 476, but by St. 1913, c. 697, the provision for retirement in case of permanent disability arising from injuries sustained in the line of duty was made mandatory in the case of cities which accepted its provisions or had accepted corresponding provisions of earlier laws by vote of the city council.

To interpret the word "member" in § 89, as amended, as excluding a fireman mandatorily and involuntarily retired from active service and placed upon the pension roll because of permanently disabling injury under § 80 would be to render the provisions of § 89 as amended in favor of a fireman's dependents inoperative where the retirement intervenes between the causal injury and death. Under such a construction § 89 as amended would be operative only in cases where the injury results in immediate death, or the death occurs before the mandatory retirement, and its clear purpose would be defeated. "A statute as a whole ought, if possible, to be so construed as to make it an effectual piece of legislation in harmony with common sense and sound reason." *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492. See also *Knapp* v. *Amero*, 298 Mass. 517, 522. It should be interpreted in the light of "the preëxisting state of the . . . law . . . and the main object to be accomplished . . . ." *Kneeland* v. *Emerton*, 280 Mass. 371, 376. We are of opinion that the deceased was a member of the fire department of the city of Cambridge at the time of his death within the meaning of § 89 as amended. See *Mackey* v. *Mott*, 25 Cal. App. 110; *O'Dea* v. *Cook*, 176 Cal. 659, 662. The cases of *People* v. *Harburger*, 132 App. Div. (N. Y.) 260, and *State* v. *Turnbull*, 132 Ohio St. 235, relied upon by the respondent, are distinguishable in the facts from the case at bar.

*Writ to issue.*