HOWARD TRAVERS, ET AL. *v.* RAYMOND C. FOGARTY, ET AL.

[No. 29, October Term, 1946.]

*Decided December 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Philip B. Perlman,* with whom were *Wirt A. Duvall, Jr.,*
and *Harry Troth Gross* on the brief, for the appellants.

*Clay Jewell* and *Samuel K. Dennis* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

This is an appeal in a mandamus case in which the
Board of Fire Commissioners of Baltimore City was
ordered by the Balitmore City Court to remove the
appellants from the roster of employees of the Depart-
ment and to retire them. The appellants are the chief
engineer and operating head of the department, the ex-
ecutive secretary of the department, and a mechanic in
the repair shop. The record shows that Chief Travers
is now 71 years old, that Secretary Wilkinson is now 72
years old, and that Mr. Yake is now 74 years old. The

reason given by the lower court for the granting of the writ is that in its opinion and under the terms of Ordinance 553 of 1925-1926, establishing a general pension system for the City of Baltimore, all classified employees of the city must retire at 70 years of age. This conclusion is strongly contested by the appellants, who say that it is not warranted either by a strict construction of the ordinance, or by its long-continued executive and administrative interpretations. They further deny the power of the Mayor and City Council of Baltimore to incorporate such a provision affecting members of the Fire Department in the ordinance, in view of the statutory provision contained in Section 90 of the Baltimore City Charter. They also contend that the appellees have no standing in court to entitle them to ask for a writ of mandamus, and that the court cannot issue such a writ against the Board of Fire Commissioners because the Board is not given any duties or powers under the ordinance and because its functions under Section 90 are discretionary.

The proceedings in this case were first instituted by the filing of a petition in which the Baltimore Fire Fighters Association, Local No. 734, a union existing among the firemen of Baltimore City, and the four appellees, presumably members of that union, were the petitioners, and the three members of the Board of Fire Commissioners of Baltimore City were the defendants. The appellant Travers thereupon filed a petition to be made a party defendant. This permission having been given, he filed a demurrer to the petition which was sustained. The reason for this is not in the record and is not before us, but presumably it was on the ground that the union, as such, was not a proper party to such a proceeding. Thereafter the union disappeared from the case and an amended petition was filed by the four appellees individually, not only against the Board of Fire Commissioners, but against the appellants and four other members of the Fire Department who were also claimed to be over 70. Before the case came on for

hearing these last four had been retired by the Board, so that there is no question before us as to them. Appellees state in the petition that they are all residents, citizens and voters of the City of Baltimore, all are members of the classified service of the city, all are employees of the Fire Department, and all are taxpayers in the city. Their right to file a petition is based, according to the allegations in the petition, upon their interest, shared in common with other voters, citizens, taxpayers and property owners, in the maintenance and efficiency of the Fire Department. They also claim special interest in the light of their present employment and their intention to make a life-time career of the service in the Fire Department. They state that the retention of overage employees retards the opportunities for the advancement of all departmental subordinate employees and that this is to the prejudice of the welfare and promotion of the latter and also to the general utility and efficiency of the departmental personnel as a whole.

The Act of 1924, Chapter 411, authorizes the City to establish a general system of pensions and retirements for its employees and to provide for the inclusion in such system "with the consent of a majority of its members, any existing pension system." This Act was before this Court in the case of *Duncan v. Graham*, 155 Md. 507, 142 A. 593, where it was held it did not authorize the passage of an ordinance providing for the payment of death benefits. Its authority was restricted by that case to provisions for payments to employees, still living, of "pensions and retirements." Subsequent amendments changed the Act to permit death benefits.

In the exercise of the power conferred by this Act the City passed Ordinance 553 of 1925-1926. This provided that all employees on January 1, 1926 (not members of the Teachers' Retirement Fund who were treated separately), shall become members of the retirement system provided by the ordinance "unless on or before a date not more than 90 days thereafter to be set by the

Board of Trustees any such employee shall file with the Board of Trustees on a form prescribed by such Board a notice of his election not to be covered in the membership of the system" and a waiver of benefits. This provision affected firemen as well as all other employees except police who were excepted from the definition of employees, and teachers, who were specially treated. As to those employees who elected not to be covered, it was provided that their services should terminate when they attained the age of 70. There is a special provision for firemen who elected not to join. They "shall be entitled to pensions * * * under existing laws as if this Article had not been passed."

A retirement system, to be financially sound (which it is presumed this was intended to be), must be based not only on specified payments by the members, but on the probability of the continuance of these payments. This must be calculated not only on the expectancy of life, but also on a definite age at which living members cease to be contributors and become beneficiaries. The age for retirement and the beginning of the receipt of benefits is therefore fixed in the ordinance. The members have to retire at the age of 70 or on the first day of the calendar month next succeeding their 70th birthday. The provision for a similar age limit of nonmembers made a uniform rule of retirement and foreclosed an argument for not joining the system which might otherwise have been made. This was that those who remained outside could have a longer tenure of service than those who joined. This would undoubtedly apply to firemen, if there were nothing else in the ordinance to the contrary.

But as we have seen, firemen, who already had a pension system, were singled out for special treatment. Those who did not come in the new system were to be entitled to their pensions under existing laws "as if this Article had not been passed." This statement means, if it means anything, that they were to be treated as if the ordinance *including the retirement age* (because that

is a part of it) were not in existence. The wording is clear. It requires no interpretation. The literal meaning of the expression used should not be tortured into something else. If a fireman elected not to be covered, he was not to be subject to any of the provisions of the ordinance. There is no occasion for an attempted construction to harmonize the provisions so that such a fireman would be subject to some provisions and not to others. Under the plain wording he is covered by all or exempt from all.

At the time of the passage of the ordinance firemen could be retired and be placed upon the pension rolls in the discretion of the Board of Fire Commissioners (1) if they had become permanently disabled while in the actual performance of duty or (2) if they had performed faithful service for not less than 20 consecutive years, or (3) if they had become unable to perform further service by reason of age, or other physical or mental disabilities. Balt. City Charter, Sec. 90; Code Pub. Loc. Laws, Art. 4, Sec. 70. It is noteworthy that no specific age is mentioned. This is left to the discretion of the Board. The Board could retire them at any age if they had the requisite period of consecutive service, and the Board could retain them to any age if they were able to perform further service to the Department. The pension to be allowed by the Board, on such retirement, was fixed at one-half of the yearly amount received by members of the Department in active service in the same grade. All of this was paid by the City. There was no deduction from pay of the members of the Department to make up any retirement fund. On the other hand, the Pension Ordinance No. 553 provided for contributions from each of the members. This ordinance has been before this Court in three cases in which it has been fully discussed so that it is not necessary for us now to give any further details about it or its purposes. These cases are *Duncan v. Graham, supra; Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673; and *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73.

It thus appears from Section 90 of the Charter what were the existing pension laws which the appellants and almost all of the other members of the Fire Department refused to give up in exchange for a system where they had to contribute part of their pay and where they would be subject to compulsory retirement at the age of 70. We cannot say that the compulsory contribution was the sole reason for their refusal. It might just as well have been the compulsory retirement. Nor can we say that it was clearly indicated by the ordinance that the compulsory retirement was obligatory, whether they came in the new system or stayed out. While it has now, by the lapse of time, become unimportant, there undoubtedly were in the Department in 1926 many firemen who would not be able to get pensions under Section 90 if they had to retire at 70. When they were due to reach that age, they might be well able to perform further duties, but might not have the 20 years continuous service. There is no provision in the ordinance for giving them a pension at 70 if they did not join the retirement system. They were left to the requirements of Section 90. These men, if they had thought they could be retired at 70 without a pension, would undoubtedly have come in the new system. Yet we are told that of the approximately 1,400 members in 1926, only five joined and that there are now in the Department approximately 700 members, under the age of 70, who may be affected by the decision in this case. And it appears from the record that it has been the unbroken practice of the Board of Fire Commissioners, since the passage of the ordinance, to retire the members of the Department under the provisions of Section 90 without regard to the age limit of 70. Long continued administrative interpretation is entitled to great weight in the construction of statutory provisions, in the absence of constitutional objections. *Wells v. Price*, 183 Md. 443, 37 A. 2d 888. The members of the present Board state in their answer that they do not think retirement is mandatory at 70, but that they have an opinion to the contrary given them

on September 10, 1945, by the City Solicitor by which they are legally bound, and that they welcome a judicial decision of the question.

From all of the foregoing it appears that the option given the firemen by Ordinance 553 in clear terms did not require them to be retired in any case at the age of 70, that it was not so understood by the firemen when they elected, and that it has not been so interpreted by the City officials until just prior to the commencement of these proceedings. We do not think it should be so interpreted now.

After this case reached this Court, and after the original briefs had been filed, it came to the attention of counsel for the appellants that Section 6 of Article 4 of the Code of Public Local Laws of Maryland (this being part of the Baltimore City Charter) had been re-pealed and re-enacted by Chapter 548 of the Acts of 1945. This Act was in effect when this case was insti-tuted and heard below, but was overlooked by the court and by all the counsel in the case. It is pertinent only to this extent, that for the first time there is placed in the Charter, as distinguished from an ordinance, the saving clause as to members of the Fire Department not par-ticipants in the existing pension system. This new pro-vision is found in Sub-section (21) under the heading of "Pensions." It provides "that nothing in this sub-section shall operate or be construed to diminish in any way the rights of any members of the Fire Department who are not participants in the presently existing gen-eral pension system of the City, their widows or de-pendents, to pensions, benefits or allowances provided for by laws or ordinances in force as of January 1, 1926. Until amended by ordinance, the presently existing pen-sion systems of the City shall remain in force." The effect of this Act is to reaffirm in slightly different words the pledge given by the ordinance, and we think it may be reasonably assumed that it was intended to continue in force the pension rights of the firemen under the old system *as they had been interpreted for the preceding*

*20 years.* Had it been intended to change that interpretation, the Legislature could readily have done so by the use of different wording. When it saw fit to incorporate in a statute, provisions which had previously only been in the ordinance, it must be presumed to have done so with knowledge and approval of the interpretation placed upon these provisions for such a considerable period of time.

The question raised by appellants whether the City had power by an ordinance to fix a retirement age, and thereby in effect amend Section 90 of the Charter, need not be considered by us in view of our conclusion that the City did not apply such an amendment to the firemen.

The question of the right of appellees to bring a mandamus proceeding would be important, were it not for the fact that our conclusion renders it unnecessary for the decision of this case. It is claimed that as taxpayers the appellees have no interest because the result of their petition, if successful, would be that the City would have to pay out one and one-half times the salaries now paid to the appellants. That is, their salaries would have to be paid to their successors, and they would have to be paid one-half of these salaries as pensions. It is also claimed that as members of the Fire Department they have shown no special personal interest because it is not alleged or attempted to be proved that they, or any of them, would be promoted or advanced by the retirement of the appellants. The right of taxpayers and citizens of the State to ask for a mandamus to enforce a public duty, if one exists, was raised in *Pumphrey v. Baltimore,* 47 Md. 145, 28 Am. Rep. 446, and discussed and the right upheld in that case on pages 154, 155. A similar right was approved in the case of *Sterling v. McMaster,* 82 Md. 164, at pages 167, 168, 33 A. 461. The question was again discussed in *Hummelshime v. Hirsch,* 114 Md. 39, at pages 51 and 52, 79 A. 38. From that time until the present it has been before the Court, under varying sets of facts in the cases of *Levering v. Board of Supervisors,* 129 Md. 335, 99 A. 360; *Levering v. Board of Park Commissioners,*

134 Md. 48, at page 59, 106 A. 176, 4 A. L. R. 374; *Levering v. Board of Supervisors,* 137 Md. 281, 112 A. 301; *Brawner v. Supervisors,* 141 Md. 586, 119 A. 250; *Thomas v. Field,* 143 Md. 128, at page 141, 122 A. 25; *Baltimore Retail Liquor Package Stores Ass'n v. Board of License Com'rs,* 171 Md. 426, 189 A. 209, 109 A. L. R. 1253; *Jones v. House of Reformation,* 176 Md. 43, at pages 52, 53, 3 A. 2d 728, and *Hillman v. Stockett,* 183 Md. 641, at page 645, 39 A. 2d 803. We do not pass upon it in connection with the allegations in the present case, because the case has been decided on other grounds.

The remaining argument raised is that a writ of mandamus cannot be issued against the Board of Fire Commissioners because neither Section 90 nor Ordinance 553 gives the Board any duties with respect to retirement at the age of 70, and because Section 90 restricts retirement to three causes, all of which are placed in the discretion of the Board. The discussion of this point would be superfluous in view of our conclusion, heretofore stated, that the proper interpretation of the ordinance does not require the retirement at 70 of firemen not in the system established by it.

It is strenuously urged by the appellees in their briefs below and above, and in their argument, that the effect of a decision adverse to their contention would result in keeping in the Fire Department venerable and aged men no longer able to climb ladders and fight fires. That it is farcical to expect ordinary men over 70 to stand up, and keeping them in service jeopardizes the public safety. They overlook the fact that the control of the Fire Department is in the Board of Fire Commissioners who can prevent any such result by a retirement of any men unable to give service. If the Board is not exercising its discretion in a manner which the appellees think is proper, the remedy is political and not judicial. It should be said in justice to the appellants that it is no where charged or shown in the case that they personally are not capable of performing the several services in which they are engaged. It does not seem from the recital of their posi-

tions that they are among those who have to climb ladders. There are many duties in the Fire Department besides those of personally fighting fires, and there seems to be no reason why the experience of firemen past their most active age, cannot be profitably utilized in other capacities to the ensuing benefit of the City. To determine such questions as this is one of the functions of the Board of Fire Commissioners, and it should be left to that Board.

For the reasons already stated the order directing the issuance of the writ of mandamus in this case will be reversed, and the petition will be dismissed.

*Order reversed and petiition dismissed, with costs.*