THE CITY OF FREDERICK *v.* HARRY L. QUINN ET AL.

[No. 854, September Term, 1976.]

*Decided April 13, 1977.*

_____

3. It may be appropriate to consider the effect, if any, of the separation agreement upon this question as well.

The cause was argued before THOMPSON, LOWE and MELVIN, JJ.

*Clater W. Smith, Jr.*, with whom was *W. Milnor Roberts* on the brief, for appellant.

*William L. Corbin* and *Ann M. Fligsten*, with whom were *Corbin, Heller & Warfield, Chartered* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

The issue decided by the Circuit Court for Montgomery County, from which this appeal arose, was whether The City of Frederick could unilaterally repeal a noncontributory police pension plan, retroactively divesting the interest of the employees who chose not to participate in a substituted contributory plan offered by the City. The court below recognized that the issue turned upon whether Maryland views a public employee pension system as a mere gratuity, representing the graciousness of a sovereign to its servants, or as a part of the earnings of an employee which was offered as an inducement to his employment and for which he has contracted. The court chose the contract theory and held that the appellees,

> " . . . by virtue of their service to the City of Frederick prior to the repeal of Article XVI, Section 196 of the City Charter, had vested pension rights as set forth therein which still remain in effect and cannot be modified, repealed or defeated by the City's unilateral acts."

While we agree in principle, we find that holding far too rigid and a step beyond that which we believe to be the law in this State.

The five appellees brought suit against the City of Frederick, a municipal corporation, asking for a declaratory judgment to the effect that they are entitled to pension benefits under Article XVI, Section 196 of the Charter of the City of Frederick, and for damages for breach of contract.[1] The parties agreed by stipulation that the appellees were employed as police officers by The City of Frederick at various times dating from September 12, 1942 until the present or the recent past. After 1951, the appellees were covered by a noncontributory retirement and disability benefit plan which provided by Article XVI, Section 196 of the Charter of The City of Frederick, that:

> "Any policeman, including the Chief of Police, who is in good standing and who has served on the force for a period of 20 consecutive years, including the years of service of any policeman now on the force, provided they are consecutive, and who has been retired from active service as provided in Section 196 shall be paid, for life, a sum of money equal to one-half of a prevailing salary, payable in semi-monthly installments. Any policeman retired as provided in Section 196 who shall not have served on the force for a period of 20 years shall be paid, for life, a sum of money prorated in the proportion that the years he has served as a policeman bears to the whole period of 20 years."

It was further stipulated that Section 196 was repealed on May 18, 1961 by resolution of the Board of Aldermen of The City of Frederick. Thereafter, the officers on the police force were offered a contributory commercial insurance pension plan to take the place of the noncontributory plan. The appellees neither consented to the change nor enrolled in the new plan.

---

1. The breach of contract was dismissed and is not before us.

Tracing the evolution of theories in the decisional law of public employee statutory pension rights [2] leaves one with the same sense of disturbing disbelief we feel when we see caricatures of our neanderthal forebears. The unfortunate result revealed by such research is that the majority of the states have not evolved from this prehistoric immaturity.

The prevailing view in the majority of the states is that public employee pension "rights" are simply gratuities which a gracious and beneficent governmental employer may confer, withhold, modify or repeal as the whim of an omniscient sovereign dictates. Annot. *Vested right of pensioner to pension*, 52 A.L.R.2d 437; Dillon, *Municipal Corporations* § 431 (5th ed. 1911).[3] The minority jurisdictions adopt a basic concept of contractual rights that vest at time of employment, but are divided upon the extent to which the rights vest in the employee.

The court below followed the strict contract theory, holding that when the pension rights vested upon employment or adoption of the plan those rights were immune from prospective legislative impairment. The court's opinion relied heavily upon *Yeazell v. Copins*, 402 P. 2d 541, which epitomizes the strict contract concept, *i.e.*, that the "contract" cannot be unilaterally modified.

Although we think that holding goes too far, we agree that a pension is more contractual than gratuitous. Having barely concluded the 200th anniversary of our experiment in a democracy that wrenched itself from monarchical rule, it is absurd to speak of a pension as "a bounty springing from the appreciation and graciousness of the sovereign". *Ballurio v. Castellini*, 29 N.J.S. 383, 102 A. 2d 662. The medieval or even colonial concepts of a compassionate and generous

---

2. We were aided in our research by two commendable law review articles: Cohn, *Public Employee Retirement Plans — The Nature of the Employee's Rights*, 1968 U. of Ill. L. F. 32, and Lehman, *Yeazell v. Copins*, 70 Dick.L.Rev. 524 (1966).

3. *But see* Antieau, *Municipal Corporation Law* § 22.120 (1976); McQuillin, *Municipal Corporations* § 12.144 (3rd ed. 1973); and Rhyne, *Municipal Law* § 8-51 (1957), which indicate that the trend is now toward adopting some form of contract theory.

sovereign rewarding his humble, devoted subjects is completely alien to our modern views of a democratic government's obligations to its citizens.

Only slightly less bemusing, on the other hand, is the picture of a citizen whose contractual strength is so formidable that the government which employs him can neither terminate nor vary the terms of the employment contract which is the essence of the strict constructionists' views explicated by *Yeazell, supra.* Such rigid interpretation is the inevitable pitfall of seeking pigeonholes with labels as substitutes for logic and common sense. See generally *Spina v. Consolidated Police, etc., Pension Fund Com.,* 41 N. J. 391, 197 A. 2d 169.

It is reasonable to assume, as the court below found factually, that appellees were induced, at least in part, to their employment by the pension benefits held out at the time, just as they were induced by the salary then offered. See *Lucas v. Seagrave Corporation,* 277 F. Supp. 338. The future benefits vested as they were proratedly earned, just as the employees' rights to their salary vested as it was earned. Momentarily assuming for argument that the City could terminate either or both of these benefits at its option, by doing so it would have no more right to withdraw retroactively the pro rata pension benefits that had accrued than it could demand repayment of the salary the employees had earned and had been paid. To that extent at least, especially in view of the proportionate prorating provision of Section 196, the pension rights vested absolutely. The provision acts as an express assurance to the employees that pension benefits they have earned by satisfactory service cannot be divested.

But the analogy of earned salary and vested pension does not withstand prospective comparison. The pension plan is not immutable and the government-employer need not keep its provisions precisely intact. As government grows in size and complexity and as more employees draw from the fund, changes must often be made to assure the soundness of the fund and permit its growth commensurate with its prospective needs. The contractual or vested rights of the

employee in Maryland are subject to a reserved legislative power to make *reasonable modifications* in the plan, or indeed to modify benefits if there is a simultaneous offsetting new benefit or liberalized qualifying condition. Each case where a changed plan is substituted must be analyzed on its record to determine whether the change was reasonably intended to preserve the integrity of the pension system by enhancing its actuarial soundness, as a reasonable change promoting a paramount interest of the State without serious detriment to the employee. In short, the employee must have available substantially the program he bargained for and any diminution thereof must be balanced by other benefits or justified by countervailing equities for the public's welfare. This seems to be the substance of the majority of cases which have found municipal pension plans contractual in nature and it is the view we expressly adopt here. It was perhaps most succinctly stated in *City of Downey v. Board of Admin. Pub. Emp. Retire. Sys.*, 47 Cal. App. 3d 621:

> "Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alteration of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages."

If reasonable substitution is offered by an employer and it is declined by the employee, he is barred prospectively from further claims upon the rejected plan and is obviously not eligible to claim under the substitute plan. But the rights which have accrued under the terminated plan may not be retrospectively withdrawn from him.

While we have no authority in Maryland directly explicating the precise nature of noncontributory public pension plans and the manner in which they may be unilaterally modified, the language of the Court of Appeals

in recent related cases reflects the thinking of an eighth decade — twentieth century court rather than the feudal views of a surrogate beneficent monarch. The City prognosticates to the contrary from its reading of two of the Maryland cases. It points out that in *Employees' Retirement v. Comes*, 247 Md. 182, the Court held that the right, even to a contributory pension, was subject to an implied condition of faithful performance and that a finding by the pension Board to the effect that the employee's service had been less than faithful, precludes entitlement to such benefits. The City points especially to a sentence included in a lengthy quote from the New Jersey case of *Ballurio v. Castellini*, *supra*, which espoused the bounty-springing-from-a-gracious-sovereign theory, and it deduces that this decision would support a holding that Maryland has adopted the gratuity concept.

We do not agree. The reasoning of the case and the holding itself are founded upon "faithful performance" by the employee. That is language of contract law. It does not comport with the arbitrary right of unilateral withdrawal upon which the gratuity principle is founded. Had the Court adopted that theory, one arbitrary paragraph would have sufficed in place of the nine pages of reasoning concluding that faithful performance is a prerequisite to benefits.

The City also relies upon *Saxton v. Board of Trustees*, 266 Md. 690. There a Baltimore City fireman died after retirement. The original retirement plan, to which the employee had contributed for sixteen years, provided death benefits to the widow regardless of whether the employee was working or retired. Twelve years before the employee's retirement the plan was changed to preclude benefits if an employee had retired before he died. The widow was denied recovery

It is difficult to see where the City draws sustenance from this case since the Court clearly stated that it was *not* argued that the prior provisions were applicable to Saxton. *Id.* at 693. Lieut. Saxton had become injured during service and was paid for a full year although disabled throughout that period. Thereafter, a special disability benefit act was

ordained by the City under which he was retired, albeit involuntarily. Judge Singley, speaking for the Court, pointed out that:

> "The ground rules here, to put it quite simply, were changed prior to the date when Lieut. Saxton sustained his injuries. In all states municipal corporations may make reasonable modifications of a pension plan at any time before the happening of the defined contingencies . . . ." *Id.* at 694.

Although the issue we now face was not before the Court of Appeals, its language is the bottom line of the conclusion we reach. Furthermore, the Court's result did not conflict with any of the Anglo-Saxon concepts of justice and fair play upon which the contract concept is founded, *i.e.*, rules may not be changed in the middle of game although substitutes are permitted within reason. See *Hickey v. Pension Bd.*, 378 Pa. 300, 310, 106 A. 2d 233.

Finally, and most persuasively to us, is the case of *Food Fair Stores v. Greeley*, 264 Md. 105. Although the employer there was a private one, the Court treated the pension plan provided as a contractual right and one that could be judicially enforced notwithstanding a provision in the plan to the contrary. Adopting language from *Siegel v. First Pennsylvania Banking and Trust Co.*, 201 F. Supp. 664, 670, the Court stated that:

> " 'Were we to adopt defendants' construction . . ., we would, in effect, set at naught our conclusion that *the Plan is a contract and not a gratuity. To hold (as we do) that plaintiff has contractual rights* but has no means of enforcing them would not only be inconsistent but futile. A right without a remedy is no right at all . . . .' " (emphasis added). 264 Md. at 113.

Surely if the Court of Appeals considers a private pension plan a contractual right, as it does in *Greeley*, the Court would do no less for public employees' pension systems. It is

inconceivable that it would view one as fish and the other fowl.

Assured, as we are, that the Court of Appeals would have us follow the contract theory, we have but to decide if it would bind the City to a strict interpretation or allow reasonable modifications and substitutions. As indicated, Judge Singley has pointed the way in *Saxton* and once again we find ourselves in accord with our overseers.

In the case before us the stipulation disclosed that a substitute contributory plan was offered to appellees at the time of the repeal of the original plan; but the plan that was offered is not presented in the record. We will remand, therefore, in order for the trial judge to obtain and review the substituted plan to determine factually whether it was either necessary or reasonable when substituted.[4]

A further question must be decided on remand, especially if the trial judge is not convinced of the reasonableness or necessity of the substituted program. The appellees met the City head-on with the issue of gratuity versus contract theory of public pensions, but they also struck from the flank with the procedural complaint that the repeal of the original plan did not conform to the publication requirement of a "fair summary" of the act being repealed, which they contend was mandated by Md. Code, Art. 23A, § 13. Commenting that "it appears that the plaintiff's contention is correct", the court did not find it necessary to decide that question in light of its holding on the more substantive issue. The issue must now be decided. Regardless of the result reached upon the reasonableness-necessity issue, the

---

4. Appellant also argues on appeal that appellees waived all rights under Section 196 and are estopped from denying that it was properly repealed. Although in its plea to the declaration appellant alleged that appellees' claims are barred by laches and the statute of limitations, the record does not reveal that any argument on waiver, laches or estoppel was made. The trial court, without discussion, found that appellees had not waived their rights. Because there was no argument below on waiver and no decision below on estoppel, those issues are not properly before us. Md. Rule 1085. We note, for the benefit of the parties, that appellant's contentions are without merit in that there is no evidence either that it was appellees' conduct which caused the City in any manner to move to its detriment nor indeed that the City did so. It was the City's past acts, not appellees', which created the issue.

trial judge should decide the procedural validity of the attempted statutory repeal. By doing so, he may save a third hearing in the event of a second appeal. This admonition to the court to act on the side of prudence should in no way be construed as indicating any view by this Court on the questions to be decided on remand.

The court will be free to hear further argument or receive further evidence if such is needed to assist its deliberations. *Montagna v. Marston,* 24 Md. App. 354, 362; Md. Rule 1071.

> *Judgment vacated.*
> *Case remanded for further proceedings in accordance with this opinion.*
> *Costs to abide the result.*