**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1007**

ROBERT F. CHERRY, JR.; ROBERT J. SLEDGESKI; JOHN
LEWANDOWSKI; CHARLES WILLIAMS, Individually and on behalf
of all persons similarly situated; BALTIMORE CITY FRATERNAL
ORDER OF POLICE, LODGE #3, INC.; BALTIMORE CITY
FIREFIGHTERS' IAFF, LOCAL 734, on behalf of their members,

    Plaintiffs - Appellees,

BALTIMORE FIRE OFFICERS UNION, LOCAL 964, INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS,

    Intervenor/Plaintiff – Appellee,

  v.

MAYOR AND CITY COUNCIL OF BALTIMORE CITY, a municipal
corporation,

    Defendant – Appellant,

  and

BOARD OF TRUSTEES OF THE FIRE AND POLICE EMPLOYEES'
RETIREMENT SYSTEM OF THE CITY OF BALTIMORE, a body politic
and corporate; EDWARD J. GALLAGHER, in his capacity as
Director, Department of Finance; THOMAS P. TANEYHILL, in his
capacity as Executive Director, Fire and Police Employees'
Retirement System of the City of Baltimore,

    Defendants.

**No. 13-1115**

ROBERT F. CHERRY, JR.; ROBERT J. SLEDGESKI; JOHN
LEWANDOWSKI; CHARLES WILLIAMS, Individually and on behalf of

all persons similarly situated; BALTIMORE CITY FRATERNAL ORDER OF POLICE, LODGE #3, INC.; BALTIMORE CITY FIREFIGHTERS' IAFF, LOCAL 734, on behalf of their members,

        Plaintiffs,

    and

BALTIMORE FIRE OFFICERS UNION, LOCAL 964, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,

        Intervenor/Plaintiff – Appellant,

    v.

MAYOR AND CITY COUNCIL OF BALTIMORE CITY, a municipal corporation,

        Defendant – Appellee,

    and

BOARD OF TRUSTEES OF THE FIRE AND POLICE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE, a body politic and corporate; EDWARD J. GALLAGHER, in his capacity as Director, Department of Finance; THOMAS P. TANEYHILL, in his capacity as Executive Director, Fire and Police Employees' Retirement System of the City of Baltimore,

        Defendants.

---

**No. 13-1116**

---

ROBERT F. CHERRY, JR.; ROBERT J. SLEDGESKI; JOHN LEWANDOWSKI; CHARLES WILLIAMS, Individually and on behalf of all persons similarly situated; BALTIMORE CITY FRATERNAL ORDER OF POLICE, LODGE #3, INC.; BALTIMORE CITY FIREFIGHTERS' IAFF, LOCAL 734, on behalf of their members,

        Plaintiffs - Appellants,

    and

2

BALTIMORE FIRE OFFICERS UNION, LOCAL 964, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,

        Intervenor/Plaintiff,

     v.

MAYOR AND CITY COUNCIL OF BALTIMORE CITY, a municipal corporation,

        Defendant – Appellee,

     and

BOARD OF TRUSTEES OF THE FIRE AND POLICE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE, a body politic and corporate; EDWARD J. GALLAGHER, in his capacity as Director, Department of Finance; THOMAS P. TANEYHILL, in his capacity as Executive Director, Fire and Police Employees' Retirement System of the City of Baltimore,

        Defendants.

---

Appeals from the United States District Court for the District of Maryland, at Baltimore. Marvin J. Garbis, Senior District Judge. (1:10-cv-01447-MJG)

---

Argued: May 14, 2014           Decided: August 6, 2014

---

Before TRAXLER, Chief Judge, and KEENAN and FLOYD, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Chief Judge Traxler and Judge Floyd joined.

---

**ARGUED**: James Patrick Ulwick, KRAMON & GRAHAM, P.A., Baltimore, Maryland, for Appellant/Cross-Appellee. Charles Owen Monk, II, SAUL EWING LLP, Baltimore, Maryland; Robert David Klausner, KLAUSNER & KAUFMAN, PA, Plantation, Florida, for Appellees/Cross-Appellants. **ON BRIEF**: Kevin F. Arthur, Jean E.

3

Lewis, KRAMON & GRAHAM, P.A., Baltimore, Maryland; George Nilson, Matthew W. Nayden, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Appellant/Cross-Appellee. Devin J. Doolan, Jr., Geoffrey M. Gamble, Baltimore Maryland, Paul M. Heylman, SAUL EWING LLP, Washington, D.C., for Appellees/Cross-Appellants.

---

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider certain constitutional challenges related to a public pension plan sponsored by the City of Baltimore (the City). The plaintiffs are active and retired Baltimore police officers and firefighters who participate in the plan (the members), as well as the unions that represent them (together, the plaintiffs). The plaintiffs primarily challenge the City's decision changing the manner in which annual increases to pension benefits are calculated, claiming that the substitution of a cost-of-living adjustment for a "variable benefit" violates the members' rights under the Contract Clause and the Takings Clause of the federal Constitution.

After considering extensive evidence, the district court concluded that the elimination of the variable benefit constituted a substantial impairment of certain members' contract rights, and that the impairment was not reasonable and necessary to serve an important public purpose. The court therefore held that the City had violated the Contract Clause, and dismissed the Takings Clause claim as moot.

Upon our review, we conclude that the members' rights under the Contract Clause were not impaired, because the members retained a state law remedy for breach of contract. Therefore, we vacate the judgment of the district court with respect to the

5

City's elimination of the variable benefit. We also affirm the court's decision upholding the remaining portions of the ordinance at issue, and vacate the court's order dismissing the Takings Clause claim. Accordingly, we remand for further proceedings consistent with this opinion.

I.

In 1962, the City instituted a public pension plan (the plan) that entitles eligible retired public safety employees to a monthly pension benefit. The basic pension benefit is funded by contributions of active members, annual contributions by the City, and earnings on the plan's investments. In 1983, the City established a method by which retirees could receive increases to their basic pension benefits (the Variable Benefit). The Variable Benefit was a "gain-sharing mechanism" that did not guarantee an increase in any given year. Instead, benefit increases were dependent on the earnings yielded by the plan's investments in the prior year. Retirees were entitled to receive a benefit increase if the investments earned more than 7.5% in the prior fiscal year. Under the Variable Benefit, all the plan earnings between 7.5% and 10%, and half the earnings in excess of 10%, would be designated for benefit increases. Any such increases derived from the Variable Benefit compounded in future years.

Since its inception, the Variable Benefit generated a benefit increase more than half the time, and retirees received an average increase of 3% annually. However, in recent years, the percentage increase generally has been lower.

Beginning in 2008, the City encountered substantial budget deficits that it was obligated to eliminate. The City implemented several measures to reduce these deficits that were unrelated to the plan, "including a hiring freeze, a pay freeze, unpaid furloughs, layoffs, deferral of infrastructure projects, rotating firehouse closures, reducing trash pickup, and cutting library hours."

About the same time, the plan's actuary determined that certain actuarial adjustments should be made to the plan to improve the plan's financial stability. To accomplish this objective, the City would be required to pay annually an additional $64 million into the plan, which would result in a total annual contribution of $164.9 million. In light of these financial difficulties, the City began to consider alternatives to the Variable Benefit that would not require the City both to bear the burden of poor investment performance and to forego some of the investment gains in years of strong performance.

The City considered various options, including a proposal from the employees' unions, which recommended replacing the Variable Benefit with a 2% annual cost of living adjustment

7

(COLA) for all retirees. The City ultimately enacted Ordinance 10-306 (the Ordinance), the legislation at issue in this case, which became effective in June 2010.

The Ordinance established a "Tiered COLA" under which retirees age 65 and older would receive an annual COLA of 2%, retirees age 55 to 64 would receive an annual COLA of 1%, and retirees under age 55 would not receive any COLA benefit. Through the Tiered COLA system, the City sought to provide the largest annual increases to the oldest retirees, who were least likely to have additional income from other sources. The Ordinance also instituted other changes to the plan, including increasing the retirement age, service, and member contribution requirements.

The plaintiffs filed a class action lawsuit in the district court, asserting that the Ordinance violated the members' rights under the Contract Clause and Takings Clause of the federal Constitution. The plaintiffs' complaint also alleged a claim for breach of contract under Maryland law as well as several other state law claims.

The district court initially determined that because the substitution of the Tiered COLA for the Variable Benefit was the only portion of the Ordinance that applied retrospectively, that provision was the only part of the Ordinance subject to a Contract Clause analysis. The court conducted two hearings to

8

determine the constitutionality of the change, and concluded that the substitution of the Tiered COLA for the Variable Benefit substantially impaired the contract rights of current retirees and members who were eligible to retire but had not yet done so.

The district court later evaluated whether the impairment was permissible because it advanced an important public purpose. The court concluded that the City had acted reasonably in eliminating the Variable Benefit in order to stabilize the plan. Nevertheless, the court held that by establishing the Tiered COLA, the Ordinance violated the Contract Clause. The court explained that the Tiered COLA system treated younger retirees more harshly than older retirees, and that the impairment was not necessary to achieve an important public purpose. The court therefore declared invalid and unenforceable the portion of the Ordinance eliminating the Variable Benefit and instituting the Tiered COLA.

The district court dismissed the plaintiffs' Takings Clause claim as moot, and granted the parties' agreed motion for a voluntary dismissal without prejudice of the state law claims. Both parties have appealed from the district court's judgment.

We first address the City's appeal. The City argues that the plaintiffs' Contract Clause claim is foreclosed, because the Ordinance does not establish a barrier to obtaining relief for breach of contract under Maryland law. The City contends that the plaintiffs may maintain a contract action under Maryland law on the basis that the City's enactment of the Ordinance was not a "reasonable modification" of the pension plan under the City's reserved legislative power. Therefore, the City asserts, the district court erred in awarding any relief under the Contract Clause.

In response, the plaintiffs contend that the City has extinguished any state law remedy for breach of contract, because the City has not waived all available defenses based on its enactment of the Ordinance. The plaintiffs also maintain that, by relying on its reserved legislative power to modify the plan, the City has refused to pay damages for breach of contract and has deprived the plaintiffs of a remedy under state law. We disagree with the plaintiffs' position, which essentially is an assertion that the plaintiffs do not have a state law remedy for breach of contract because the City has not conceded liability in that regard.

The Contract Clause provides that "No State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts."

10

U.S. Const. art. I, § 10, cl. 1.  The Clause prevents a state from arbitrarily "reduc[ing] its financial obligations whenever it want[s] to spend the money" elsewhere, but nevertheless permits the state to modify its contractual obligations subject to certain limitations.  U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 26 (1977).

We conduct a three-part inquiry to "harmoniz[e] the command of the Clause with the 'necessarily reserved' sovereign power of the states to provide for the welfare of their citizens."  Balt. Teachers Union v. Mayor & City Council of Balt., 6 F.3d 1012, 1015 (4th Cir. 1993) (citation and footnote omitted).  In reviewing an alleged Contract Clause violation, we ask: (1) whether there has been an impairment of a contract; (2) whether the state law has operated as a "substantial impairment of a contractual relationship"; and (3) if there has been a substantial impairment, whether the impairment is permissible because it is "reasonable and necessary to serve an important public purpose."  Id. at 1015, 1018 (citations omitted) (emphasis in original).

Our initial inquiry focuses on whether the law in question has effected an impairment of a contract.  A state or municipality does not "impair the obligation of contracts" merely by breaching one of its contracts or by otherwise modifying a contractual obligation.  As we stated in Crosby v.

11

City of Gastonia, "[i]t would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution." 635 F.3d 634, 642 n.7 (4th Cir. 2011) (quoting Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996)). Thus, our task is not to decide whether a breach of contract has occurred, but to determine whether the City has erected a legal barrier "that [has] prevented the [plaintiffs] from obtaining damages, or some equivalent remedy, for [any] breach." Horwitz-Matthews, 78 F.3d at 1251.

If the plaintiffs retain the right to recover damages for breach of contract, there is no impairment of contract under the Contract Clause. Crosby, 635 F.3d at 642 n.7; see also Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 48 (1st Cir. 2011). As the Seventh Circuit explained in Horwitz-Matthews, Inc. v. City of Chicago, a city is permitted to raise any defense to breach of contract in a state law action, except "a defense that even if there was a contract and it was broken the [c]ity cannot be liable because the repealing ordinance extinguished any remedy that the [plaintiff] would otherwise have had." 78 F.3d at 1252; see also Redondo Constr., 662 F.3d at 48.

In the present case, the Ordinance neither prevents the plaintiffs from pursuing a state law breach of contract claim nor shields the City from its obligation to pay damages should

12

it be found in breach of contract. Also, the City does not cite any aspect of the Ordinance as a potential defense to the plaintiffs' assertion of a breach of contract claim. See Council 31 of the Am. Fed. of State, Cnty. & Mun. Emps. v. Quinn, 680 F.3d 875, 886 (7th Cir. 2012) (plaintiffs had no Contract Clause claim when the state's defense did not rely on the court's interpretation of the legislation being challenged). Instead, the City relies on its reserved legislative power under Maryland law, which the City contends provides the needed authority for replacing the Variable Benefit with the Tiered COLA.[1]

Under Maryland law, the contract or vested rights of employees "are subject to a reserved legislative power to make reasonable modifications in the plan, or indeed to modify benefits if there is a simultaneous offsetting new benefit . . . ." See City of Frederick v. Quinn, 371 A.2d 724, 726 (Md. Ct. Spec. App. 1977) (emphasis added). To qualify as a "reasonable modification," a revised plan must provide the employees with

---

[1] The City also argues that it was not obligated under the terms of the original contract to continue the Variable Benefit prospectively. In support of this contention, the City relies on plan language pre-dating the Ordinance, which stated that "any benefit increase . . . is not and does not become an obligation" of the City. This defense to a breach of contract claim has no bearing on the plaintiffs' ability to seek relief under state law, because the plaintiffs claim that the passage of the Ordinance breached the contract.

13

"substantially the program [they] bargained for and any diminution thereof must be balanced by other benefits or justified by countervailing equities for the public's welfare." Id. In articulating this rule, the Court of Special Appeals of Maryland recognized that the needs of the government may change over time as new employees draw on pension funds, requiring modifications to ensure the "soundness of the fund." Id.; see also Saxton v. Bd. of Trs., 296 A.2d 367, 369 (Md. 1972) ("In all states municipal corporations may make reasonable modifications of a pension plan at any time before the happening of the defined contingencies.").

The reasonable modification principle articulated by Maryland's courts verifies that the plaintiffs have an opportunity to litigate a breach of contract claim under state law. If the City's defense is unsuccessful and a court determines that the City has a contractual duty to the members and that the modification of the plan is unreasonable under Maryland law, the plaintiffs may be entitled to relief. Because the Ordinance does not foreclose any such claim by the plaintiffs, the City has not extinguished the plaintiffs' remedy

14

under state law by enacting the Ordinance.[2] Accordingly, the plaintiffs do not have a viable Contract Clause claim.[3]

Our conclusion is not altered by the plaintiffs' assertion that, absent a holding in their favor, the City will have unfettered discretion to breach its contracts with public employees and, therefore, any contracts to which the City is a party will lack mutuality. This contention lacks merit because, under Maryland law, the City is only permitted to make <u>reasonable</u> modifications to its pension plans and is required to provide members with a substantially similar program after such modifications. See <u>Quinn</u>, 371 A.2d at 726. Any reduction in benefits "must be balanced by other benefits or justified by countervailing equities for the public's welfare." <u>Id.</u>

In view of this protection afforded under state law for breach of contract, we will not apply the Contract Clause to "require a State to adhere to a contract that surrenders an essential attribute of its sovereignty" by creating irrevocable

---

[2] We disagree with the plaintiffs' characterization of the rule in <u>Horwitz-Matthews</u> and <u>Crosby</u> as constitutional avoidance or abstention. Instead, we hold that no Contract Clause violation has occurred because the plaintiffs are unable to demonstrate an impairment of the members' contract rights.

[3] Because the Ordinance has not impaired the members' contract rights, we do not address the City's alternative arguments that any impairment was insubstantial, and that the Ordinance was reasonable and necessary to achieve an important public purpose under <u>Baltimore Teachers Union</u>.

15

contract rights binding on all future legislatures. U.S. Trust Co., 431 U.S. at 23. We hold that the plaintiffs' allegations constitute "nothing more than a mere breach of contract, not rising to the level of a constitutional impairment of obligation," Crosby, 635 F.3d at 642, and we vacate the district court's judgment finding the City in violation of the Contract Clause.

III.

We briefly address the plaintiffs' cross-appeal. The plaintiffs argue that the district court erred: (1) in rejecting their additional Contract Clause claims challenging other aspects of the Ordinance; and (2) in dismissing the plaintiffs' Takings Clause claim as moot.

The challenged provisions of the Ordinance at issue in the cross-appeal involve the increase in the age and service requirements for retirement eligibility, the use of a member's prior 36 months' salary rather than prior 18 months' salary to calculate the basic benefit, the increase in required member contributions over a period of years, the reduction in the interest rate on member contributions, and a change in the eligibility requirements for the deferred retirement option

16

plan.[4]   The plaintiffs argue that the district court erred in holding that the members do not have "vested" constitutional rights upon the commencement of their employment and, therefore, that the court wrongly concluded that these provisions of the Ordinance do not retrospectively impair the members' rights under the Contract Clause.

In advancing this argument, the plaintiffs cite Article 22, Section 42 of the Baltimore City Code, which provides:

> Upon becoming [a member of the plan], such member shall thereupon be deemed to have entered into a contract with the Mayor and City Council of Baltimore, the terms of which shall be the provisions of this Article 22, as they exist at the effective date of this ordinance, or at the time of becoming a member, whichever is later, and the benefits provided thereunder shall not thereafter be in any way diminished or impaired.

Relying on this provision, the plaintiffs assert that any unilateral modifications of the plan made by the City impair the members' rights under the Contract Clause.

We need not decide whether the district court correctly held that Section 42 does not create constitutionally protected rights upon the commencement of a member's employment.  Even if we assume, without deciding, that such rights exist, our holding under Crosby governs our consideration of the plaintiffs' claim

---

[4] We observe that these provisions apply only to a subset of plan members, namely, active members for whom the Ordinance does not provide a "grandfather" exception.

17

that the remaining provisions of the Ordinance violate the Contract Clause. As with the Ordinance's elimination of the Variable Benefit, the plaintiffs also may seek a state law remedy for breach of contract related to the other portions of the Ordinance.[5] The members therefore have not established an impairment of their rights under the Contract Clause. Accordingly, we affirm the district court's judgment upholding the Ordinance with respect to these claims.

The plaintiffs also appeal the district court's dismissal of their Takings Clause claim. The Takings Clause prohibits the taking of private property for public use, without just compensation. U.S. Const. amend. V, XIV. In their complaint, the plaintiffs asserted that by eliminating the Variable Benefit, the City has effected a per se taking of the members' property without just compensation in violation of the Takings Clause. After issuing its ruling on the Contract Clause claim, the district court dismissed the plaintiffs' Takings Clause claim as moot. The court reasoned that any relief the plaintiffs could obtain on their Takings Clause claim would be duplicative of the relief awarded on their Contract Clause

---

[5] We express no opinion regarding whether the plaintiffs will be able to establish the necessary elements of breach of contract under Maryland law, or the merits of the City's possible defenses related to these provisions.

18

claim, other than the possibility of discretionary attorneys' fees that the court was not inclined to award.

Given our determination that the plaintiffs have failed to establish a Contract Clause violation, the plaintiffs' Takings Clause claim no longer is moot. And, because the district court did not address the substance of the Takings Clause claim, we vacate the court's order with respect to this claim and remand it to the district court to decide in the first instance.[6]

IV.

In conclusion, we vacate the district court's judgment finding the City in violation of the Contract Clause with respect to the Tiered COLA, affirm the court's judgment upholding the remaining portions of the Ordinance challenged in the Contract Clause claim, vacate the court's order dismissing the Takings Clause claim, and remand the case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

---

[6] The plaintiffs may attempt to refile in the district court their state law claims that were dismissed without prejudice, or they may initiate proceedings in state court alleging breach of contract under Maryland law. If the plaintiffs choose to pursue either of these two courses of action, the district court may wish to hold any proceedings regarding the Takings Clause claim in abeyance pending the resolution of related contractual issues.

19