535 A.2d 481

Ira V. QUESENBERRY

v.

WASHINGTON SUBURBAN SANITARY COMMISSION.

No. 20, Sept. Term, 1986.

Court of Appeals of Maryland.

Jan. 13, 1988.

John E. Sutter (Ashcraft & Gerel, on the brief), Baltimore, for appellant.

Sheila D. Collins (Nathan J. Greenbaum, on the brief), Hyattsville, for appellee.

Argued before MURPHY, C.J., and SMITH,[*] ELDRIDGE, COLE, RODOWSKY, COUCH[*] and McAULIFFE, JJ.

McAULIFFE, Judge.

The Employees' Retirement Plan of the Washington Suburban Sanitary Commission (WSSC) provides an increased level of benefits to an employee under certain circumstances when the cause of disability is "more than fifty percent the result of an accident occurring in the actual performance of duty." Believing he qualified for those benefits, Appellant filed a claim with the Retirement Coordinator of the WSSC. Meeting with no success, Appellant then filed an action in the Circuit Court for Prince George's County, seeking declaratory relief and damages for breach of contract. WSSC interposed a defense of limitations and moved for summary judgment. Judge G.R. Hovey Johnson granted WSSC's motion on the ground that the complaint had not been filed within three years from the accrual of the cause of action. Appellant entered a timely order of appeal to the Court of Special Appeals, and we issued a writ of certiorari on our own initiative before consideration by that Court.

We shall reverse, finding that WSSC's retirement plan establishes an administrative procedure that has not been completed in this case, and that the circuit court, therefore, should not have entertained the action.

Appellant had been an employee of the WSSC for twenty years before retiring on December 31, 1979. At the time of

---

[*] Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

his retirement, Appellant was suffering an occupational disability as a result of contact dermatitis of both hands, and he was granted ordinary disability retirement benefits. Appellant believed that he was entitled to the additional benefits specified by the plan, and filed a claim for those benefits.

In rejecting Appellant's claim for the higher level of benefits, the Retirement Coordinator stated that: 1) the serious disability contemplated by the plan must result from a single accident or occupational disease, 2) the parties were bound by the extent of disability found by the Workmen's Compensation Commission, which in this case was twenty-five percent of the body as a whole resulting from the earlier back injury and fifteen percent of each hand resulting from the occupational disease, and 3) that even if successive industrial disabilities could be aggregated under the plan, the disabilities in this case did not add up to more than fifty percent of the body as a whole. The procedural posture of this case prevents us from reaching the underlying substantive questions.

The claims procedure mandated by § 15.07 of WSSC's retirement plan provides:

A claim for benefits under the Plan must be made to the Personnel Director in writing. The Personnel Director shall provide adequate notice in writing to any Participant, joint annuitant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the Participant, joint annuitant or beneficiary. A claimant, or his authorized representative, whose claim has been denied may request a review of the denial by the Secretary of the Commission. In the event the Secretary denies the Participant's claim, the Participant or his representative may appeal the claim to the Executive Director. The decision of the Executive Director shall be final and binding upon all parties.

On February 20, 1981, Appellant sent his written claim for the higher level of disability retirement benefits to John Prather, who held the title of Retirement Coordinator, and who apparently was authorized to accept claims on behalf of the Personnel Director. From Prather's letter of reply dated February 27, 1981, we are unable to determine whether the claim was referred to or considered by the Personnel Director. The letter simply stated that the writer had reviewed the requirements of the plan and concluded that Appellant did not qualify because he did not have a single award from the Workmen's Compensation Commission finding more than fifty percent permanent disability, and because the disability award for the earlier back injury could not be considered. The letter concluded, "Should you have any questions, please contact me at once," and was signed by Prather over the designation "Retirement Coordinator."

Appellant consulted with the attorney who was representing him in the worker's compensation claim, and on March 9 that attorney wrote Prather requesting a copy of "the master legal document or portions thereof that deal with eligibility for job related disability benefits." Prather responded by forwarding an extract copy of Article VII of the Plan, which dealt with disability retirement pension benefits. Prather did not then, or at any other time, send to Appellant or his attorney a copy of § 15.07, which detailed the claims procedure, nor did he advise either of them concerning the proper procedure to be followed. On March 17, Appellant's attorney wrote to Prather, stating that he disagreed with Prather's interpretation of § 7.02 of the plan. He enclosed a report from the treating dermatologist which indicated that Appellant was ninety to one hundred percent disabled as a result of contact dermatitis, and asked that Prather reevaluate the claim.

Nearly two months later, on May 13, 1981, Prather wrote to Appellant's attorney, stating:

As you requested, I have reviewed Mr. Ira V. Quesenberry's claim to receive Job–Related Disability Benefits.

In my opinion, however, Mr. Quesenberry does not qualify for a job-related disability pension because he is not more than 50% disabled, as determined by the Workmen's Compensation Commission. He was awarded a rating of 25% permanent disability of the body in 1974, and 15% disability of each hand in 1980. A 15% rating for each hand does not add up to 30% disability. Regardless of whether we interpret Section 7.02 of the Plan to require that the disability arising from a single accident or from more than one accident, Mr. Quesenberry does not qualify.

I believe that this should answer any questions you may have concerning Mr. Quesenberry's request.

Sincerely,
/s/ John E. Prather
Retirement Coordinator

More than two years later, on September 6, 1983, Appellant's attorney again wrote Prather, restating his earlier position, and concluding as follows:

I will forbear filing a lawsuit in this matter for a period of thirty (30) days to allow you to reconsider your position. At the expiration of that time, suit will be filed to enforce the provisions of Section 7.02 as well as requesting appropriate damages and attorneys fees.

Prather's response on October 5, 1983, that "our position with regard to your client's disability claim remains unchanged" was again given over his signature and designation as "Retirement Coordinator." Appellant filed suit on July 13, 1984.

WSSC contends that Appellant's cause of action arose on February 27, 1981, when Prather first advised him that he did not qualify for increased disability benefits. Accordingly, the Commission argues, the action of July 13, 1984, was not timely.

Appellant's argument is slightly more involved. He first contends that his cause of action did not accrue until his claim was finally denied, and that under the terms of the

Plan that denial did not occur until there was a third-tier rejection by the Executive Director. He next argues that Prather had been authorized by the Personnel Director, the Secretary of the Commission, and the Executive Director of Plan to act in their stead, and that Prather's three letters to Appellant represented rejections of the claim by each of those persons. Finally, he says, Prather's last letter was sent on October 5, 1983; thus, the action of July 13, 1984, was timely.

We do not accept either argument, although we do agree with Appellant that he was required to exhaust the avenues of review and appeal specified by the Plan before seeking judicial review. Initially, we consider whether the Plan mandates an administrative proceeding, creates contract rights enforceable by a civil action, or, as WSSC suggests, represents nothing more than the largess of a beneficent employer which may be granted or withheld at will.

Previous decisions of the appellate courts of this State make it clear that the "gratuity" argument has been rejected with respect to both private and public pension plans. *See Food Fair Stores v. Greeley,* 264 Md. 105, 285 A.2d 632 (1972) and *City of Frederick v. Quinn,* 35 Md.App. 626, 371 A.2d 724 (1977). *See also Dahl v. Brunswick Corp.,* 277 Md. 471, 476, 356 A.2d 221 (1976) (holding that employer policies may become contractual obligations when, with knowledge of their existence, employees start or continue work for the employer).

The rights conferred by a pension plan are contractual in nature, although under certain circumstances they may be modified by the unilateral action of the employer. *Saxton v. Board of Trustees,* 266 Md. 690, 694, 296 A.2d 367 (1972); *Food Fair Stores v. Greeley, supra,* 264 Md. at 114, 285 A.2d 632; *City of Frederick v. Quinn, supra,* 35 Md.App. at 634, 371 A.2d 724.

In this case, however, the engine for enforcement of those rights is not an action at law on the contract, but rather the administrative procedure mandated by the Plan.

WSSC is a state agency, created by the Legislature through a public general law. *Wash. Sub. San. Comm'n v. Mitchell & Best,* 303 Md. 544, 550, 495 A.2d 30 (1985); *Donocam Assoc. v. Wash. Sub. San. Comm'n,* 302 Md. 501, 510, 489 A.2d 26 (1985); *Prince George's Co. v. Blumberg,* 288 Md. 275, 294–95, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808; *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 509–12, 397 A.2d 1027 (1979). The Legislature specifically authorized WSSC to formulate and adopt a pension and retirement plan for its employees. Maryland Code (1957, 1983 Repl. Vol.) Art. 29, § 11–113. The procedures specified in the Plan for initial consideration and subsequent review of a claim are to be performed by the governmental agency, through those employed by it for that purpose, and this adjudicative process is accordingly an administrative proceeding. *See* 1 Davis, *Administrative Law Treatise* § 1:1 (2d Ed.1978).

▪▪▪ As a general rule, administrative remedies must be exhausted before resort may be had to the courts. *Collins v. Foster,* 302 Md. 328, 330, 487 A.2d 1189 (1985); *Prince George's Co. v. Blumberg, supra,* 288 Md. at 283, 418 A.2d 1155. Although there are well-defined exceptions to that rule, *Prince George's Co. v. Blumberg, supra,* 288 Md. at 284–85, 418 A.2d 1155, none is applicable to the facts of this case. Appellant was obliged to pursue to a conclusion the remedies provided by the Plan, and he has not done so. Appellant is incorrect when he states that Prather's three letters represented decisions at each of the three levels required by the administrative procedure. Assuming, without deciding, that the evidence of record was sufficient to establish a delegation of authority, Appellant's argument falls because neither the Personnel Director nor the Executive Director could lawfully delegate the decision-making responsibility imposed upon them by the Plan. Appellant's claim involves important property interests, and Appellant is entitled to administrative due process. Although §§ 15.-03 and 15.04 of the Plan specifically contemplate broad delegations of authority by the Secretary of the Commis-

sion, nothing in the Plan gives a similar right of delegation to the Personnel Director or to the Executive Director. In an analogous situation, *Comptroller v. Myers*, 59 Md.App. 118, 474 A.2d 941 (1984), where a statute dealing with dismissal of classified employees required that the final decision be made or approved by the Secretary of Personnel, the Court of Special Appeals held that:

> [A]lthough the Secretary may delegate to an appointee his authority to hear, investigate, and determine charges brought against a classified employee, the decision of that appointee is not final until approved by the Secretary. 59 Md.App. at 126, 474 A.2d 941.

We do not suggest that each official considering the claim or appeal must afford Appellant a hearing. We note, however, that when an agency performs an adjudicative function involving property rights of this nature, the right to a hearing at some stage of the process may be required to accommodate the constitutional requirement of due process.[1] *Prince George's Co. v. Blumberg, supra*, 288 Md. at 295, 418 A.2d 1155; *Hyson v. Montgomery County*, 242 Md. 55, 67, 217 A.2d 578 (1966); 2 Davis, *Administrative Law Treatise* § 12:1 (2d Ed.1979). Likewise, we do not suggest that administrative bodies performing quasi-judicial functions may not avail themselves of summary dispositions when the relevant adjudicative facts are not in dispute. We do make clear, however, that when, as here, the decision is required to be made or approved by a designated official, that official may not delegate the ultimate decision-making responsibility.

This record does not show that any of the three officials designated by the Plan made a decision concerning Appellant's claim. The administrative process has clearly not been completed. Indeed, except for the filing of the claim,

---

**1.** Where a hearing is required by law, the proceeding becomes a "contested case" within the meaning of the Maryland Administrative Procedure Act. Maryland Code (1984) § 10–201(c) of the State Government Article.

it may not have begun in any meaningful sense. Appellant is entitled to have his claim considered and to receive the initial decision of the Personnel Director. If that proves unfavorable, he may avail himself of the additional procedures provided by the Plan. When these procedures have been exhausted, he is entitled to seek judicial review. Because the administrative remedies have not yet been exhausted, Appellant's resort to the courts is premature.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER DISMISSING THE CASE FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES. APPELLEE TO PAY THE COSTS.