792 A.2d 277

**STATE RETIREMENT AND PENSION SYSTEM of Maryland**

v.

**Patrick T. THOMPSON.**

**No. 74, Sept. Term, 2001.**

Court of Appeals of Maryland.

March 4, 2002.

Randolph Stuart Sergent, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for petitioner.

Gerald C. Baker (Baker & Associates, LLC, on brief), Lanham, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

WILNER, J.

The Circuit Court for Prince George's County, through a writ of mandamus, effectively enjoined the State Retirement and Pension System of Maryland (SRPS) from complying with a statutory mandate to reduce disability retirement benefits payable to respondent, Patrick Thompson, by amounts equivalent to workers' compensation benefits that Thompson is receiving by reason of the same work-related disability that served as the basis for his retirement. Two issues are presented here: (1) whether the court should have dismissed Thompson's complaint for failure to exhaust an available administrative remedy before resorting to court, and (2) whether the court's ruling was substantively incorrect. We shall answer both issues in the affirmative and, as a result, reverse the judgment and direct that the complaint be dismissed.

## BACKGROUND

Regrettably, the record in this case is convoluted and confusing, in part because the issues arise from the interrelationship of two parallel proceedings—a workers' compensation claim and proceedings involving SRPS—and in part because the record itself is deficient in a number of respects.

Maryland law precludes a government employee from collecting duplicative benefits for the same work-related disability under both the workers' compensation law and the employer's retirement system. If the employee is covered by SRPS, the basic disability benefits payable by SRPS are reduced by the amount of workers' compensation benefits received by the employee. Maryland Code, § 29–118(b)(1) of the State Personnel and Pensions Article (SPP) requires the Board of Trustees of SRPS to reduce disability retirement benefits otherwise payable to the former employee by the amount of any related workers' compensation benefits paid or payable after the effective date of retirement. If the employee is covered by some other public employment plan that provides disability benefits, it is the workers' compensation benefits that get reduced. Section 9–601(a) of the Labor & Employ-

ment Article (LE) provides, in that situation, that payment of the disability retirement benefit satisfies, to the extent of the payment, the employer's liability for workers' compensation benefits. Because Mr. Thompson was covered by SRPS, we are concerned here with the reduction required by SPP § 29–118(b)(1).

Thompson was a maintenance employee of the University of Maryland. On December 5, 1989, while removing topsoil from a flower bed, he slipped, fell, and injured his back. Although he sought immediate medical attention, he was able to continue working until March, 1990. In June, 1990, he filed a workers' compensation claim and, commencing January 8, 1991, began receiving temporary total disability benefits of $204/week, which, on a monthly basis, amounted to $884 [ ($204 × 52) ÷ 12]. That continued until May, 1996.

At some point, which is not clear from the record, Thompson retired on disability and was awarded disability retirement benefits that, at various places in the record, have been asserted to be $980/month, $960/month, $908/month, $920/month, and $1,045/month. The record reveals that the retirement was deemed "effective" as of May 1, 1994, but there is no evidence of when that decision was made, and there is some indication that there may have been a considerable delay, of up to two years. It appears to be the case that, notwithstanding that the disability retirement benefits, whatever they were, exceeded the $884/month that Mr. Thompson was collecting in workers' compensation benefits, no disability retirement benefits at all were paid to Mr. Thompson until some time in 1996. That, too, is not entirely clear, however.

In August, 1996, following a hearing, the Workers' Compensation Commission determined that Thompson was permanently and totally disabled and, accordingly, it terminated the temporary total benefits and replaced them, retroactive to May, 1996, with permanent total disability payments, in the same amount of $204/week ($884/month). That sum was then reduced temporarily by $24/week in order to reimburse the

employer's insurer, Injured Workers' Insurance Fund (IWIF), for a lump sum attorneys' fee payment of $7,500.

The University and IWIF sought judicial review of that award. In July, 1997, while that matter was pending in the Circuit Court for Prince George's County, Thompson filed, in the judicial review action, a petition for temporary *ex parte* injunctive relief. Though acknowledging several times that SRPS had the right to set off any workers' compensation benefits received by him, Thompson complained that, if it was allowed to do so, he would be destitute and unable to meet his obligations, and he therefore asked that the court enjoin SRPS from setting off the workers' compensation benefits. As best we can tell from some of the statements made at the hearing on the motion, Thompson was hoping to arrange a lump sum settlement of the workers' compensation case, and he wanted SRPS to continue paying the full amount of retirement benefits, without setoff, until such a settlement could be effected, at which point he might be able to reimburse SRPS for any funds that, due to the statutory right of setoff, he was not entitled to receive. In essence, he was looking for an interest-free loan from SRPS, although he did not articulate his request in that manner. He estimated his chance of effecting such a settlement as no better than even.[1]

---

1. No one has raised the question of whether it was appropriate to seek such relief in an action for judicial review of the workers' compensation decision. The party affected by the injunctive order was SRPS, which was not a party to the workers' compensation case. Moreover, the issues in an action for judicial review of a workers' compensation order are ordinarily those set forth in LE § 9–745—whether the Commission justly considered all of the facts about the accidental personal injury, exceeded the powers granted to it under the article, or misconstrued the law and facts applicable in the case decided. The question of whether SRPS was entitled to set off workers' compensation benefits against disability retirement benefits was not before the Workers' Compensation Commission, was never considered by it, and was not, therefore, an issue in the judicial review action. Although it is not inherently impermissible to join other claims in an action for judicial review of an administrative order, the court should be guided by Maryland Rule 2–503, which allows a consolidation or joint trial of claims, issues, or actions "[w]hen actions involve a common question of law or fact or a common subject matter...." We are at a loss to

The court granted the requested injunctive relief. In an order entered September 10, 1997, it made a number of findings regarding what Thompson had received in workers' compensation benefits and what, in the court's view, he was entitled to receive in disability retirement benefits, and, upon those findings, the court, (1) enjoined SRPS from exercising a setoff against monies that represented pension benefits due Thompson until January 21, 1998 (later extended to April 30, 1998), but (2) directed that Thompson fully reimburse SRPS "so as to reduce [Thompson's] disability retirement benefit 'by any related workers' compensation benefits paid or payable after' May 1, 1994, including any and all duplicative benefit payments that [SRPS] may make to [Thompson] in accordance with this Order after August 1, 1997." The apparent basis of the order was entirely one of sympathy—that if SRPS were allowed to effect the credit mandated by the statute, the net amount payable to Thompson would be insufficient to meet his needs.

Several things occurred in relatively short order thereafter. SRPS appealed the injunctive order entered by the Circuit Court. On January 21, 1998, the Circuit Court affirmed the order of the Workers' Compensation Commission. SRPS moved to dissolve the injunctive order, which, on January 26, 1998, the court denied. SRPS then filed an answer to the August petition and noted an appeal from the court's refusal to dissolve the injunctive order. It requested the Circuit Court to stay the injunction pending a decision by the Court of Special Appeals. After a hearing, the Circuit Court said that it would enter a stay of the injunctive order until April 30, 1998, which was the date it was due to expire, although the record does not reveal that any such order was ever signed or docketed.

On May 28, 1998, J. Barry Schaub, the Director of Benefits Processing for SRPS, informed Thompson by letter that he

determine what common question of law, fact, or subject matter existed in this instance between the judicial review action and the claim against SRPS.

would soon receive a check for $432, representing a refund of "the non-State portion of the retroactive retirement benefits held on [his] account." The letter then set forth a number of calculations, leading to the conclusion that Thompson owed SRPS over $18,000. Schaub calculated the total workers' compensation benefits paid for the period May 1, 1994 through August 1, 1997, as being $36,924, and the total retroactive disability retirement benefits held for his account as being $26,770, of which $26,337 was the "State portion." The letter advised that, because of the injunctive order entered by the Circuit Court, he had been overpaid $7,956 for the period August, 1997 through April, 1998, and that SRPS intended to recover that amount plus $10,586 in workers' compensation benefits paid or payable between May 1, 1994 and August 1, 1997, for a total of $18,542. Accordingly, Schaub advised that, beginning with the May, 1998 retirement check, SRPS would be applying a setoff of $884/month, which would remain in effect until termination of the workers' compensation benefits. The letter ended by informing Thompson that, subject to the pending appeal in the Court of Special Appeals, he had a right to request an administrative appeal of the setoff decision. There was no immediate response to that letter.

In its appeals to the Court of Special Appeals, SRPS argued that, (1) the Circuit Court had no "jurisdiction" in the matter because Thompson had failed to exhaust an available administrative remedy, and (2) the court erred on the merits because SRPS was prohibited by SPP § 29–118 from making duplicative payments. In an unreported opinion filed September 15, 1998, the intermediate appellate court found no merit in either argument and thus affirmed the injunctive order entered by the Circuit Court. With respect to the exhaustion argument, the court cited SPP §§ 10–207 and 10–208 as requiring SRPS to give reasonable notice of its intended action prior to making a setoff and of the time and place of a hearing, which the court concluded the agency failed to do.[2] Because, in its view,

---

2. The court obviously intended a reference to the State Government Article, rather than the State Personnel and Pensions Article. SPP

Thompson never received notice that SRPS intended to set off the workers' compensation benefits, the administrative remedy of a hearing before the SRPS Board of Trustees was rendered "inadequate," thereby allowing Thompson to go directly to court.

On the merits, the court viewed the issue as whether SRPS could withhold disability retirement benefits in order to recoup duplicative payments it had already made, and it concluded that the court could preclude SRPS from doing that if the effect were to render Thompson destitute. "We see no reason," it said, "why [Thompson] cannot reimburse the Retirement System in a manner that will not place his family in economic peril."

It does not appear that this ruling by the Court of Special Appeals had any legal effect, and, indeed, the appeal should have been dismissed as moot. The injunctive order at issue had expired, by its own terms, on April 30, 1998—almost five months before the opinion was filed. Given that fact, and in accordance with Schaub's May, 1998 letter, SRPS again began setting off the workers' compensation benefits of $884/month against the State portion of the disability retirement benefits. Although on this point as well the record is not at all clear, we are advised in SRPS's brief that Thompson's gross retirement benefit, including cost-of-living increases, at that point was $1,045, that SRPS set off against that amount the $884 Thompson was receiving in workers' compensation benefits, that it was sending to him the difference of $161/month, and that, when coupled with the $884 he received from IWIF, Thompson was receiving the full amount he was entitled to receive on account of his disability.

---

§§ 10–207 and 10–208 have nothing to do with notice and administrative hearings. Those sections of the State Government Article, however, are part of the contested case provisions of the Administrative Procedure Act. Section 10–207 requires an agency to give reasonable notice of the agency's action, and § 10–208 requires notice of any hearing to be held by the agency.

In August, 1999, counsel for Thompson wrote to the Executive Director of SRPS, Mr. Peter Vaughn, requesting his assistance.  He advised that Thompson was receiving $687/month in workers' compensation benefits, that he had received no disability retirement benefits since April, 1998, and that he was then in negotiation with IWIF to secure a lump sum payment.[3]  Counsel informed Vaughn that, if SRPS denied relief, he would return to the Circuit Court.  Vaughn responded that the agency had informed Thompson in May, 1998, that the setoff was required by law and allowed by the expiration of the injunctive order.  He noted that Schaub's letter had outlined Thompson's appeal rights and that he had received nothing further from Thompson over the course of the past fifteen months.  Though expressing "empathy" with Thompson's economic plight, Vaughn advised that "the only way to stop administering the offset would require either a ruling by the Board of Trustees or a court order."

Thompson's attorney also received a response from the Assistant Attorney General who was temporarily serving as counsel to SRPS. She too made reference to Schaub's letter notifying him of the agency's intention and of his administrative remedies.  She enclosed a copy of the Board of Trustees regulations relating to hearing procedures and stated that Schaub's letter and her current letter "undoubtedly provide you and your client with formal notice of the Agency's action and the administrative remedies that you may pursue to prevent the offset of his disability retirement benefits."  The letter noted that, although counsel's August letter appeared to be a request for relief from the setoff, it did not specify whether Thompson wished to pursue his administrative remedies, and it invited counsel to contact the Assistant Attorney

---

3. No explanation was given for the figure $687—why the workers' compensation benefit was less that the $884 awarded by the Commission.  The assertion that Thompson was receiving no disability retirement benefits is also at odds with SRPS's averment that he was receiving $161/month beginning with his May, 1998 payment.

General assigned to this case upon his return from vacation "about the Agency procedures available to an individual who is adversely affected by an Agency's action."

Nothing more occurred until February 15, 2001, when Thompson filed, in the same workers' compensation judicial review action that had been terminated in October, 1998, with the entry of the mandate from the Court of Special Appeals affirming the injunction issued by the Circuit Court, a complaint for writ of mandamus and *ex parte* order. In his complaint, Thompson noted that his negotiations with IWIF to arrange a lump sum settlement of the workers' compensation claim were ongoing, although "effective resolution [was] not expected for a period of 3 to 6 months." He asserted that he was receiving $289 bi-weekly from IWIF, and that he was destitute and in pain. On that basis alone, he asked for a writ of mandamus "declaring that [he] receive duplicative payment benefits from [SRPS] and [IWIF]...."

The next day, apparently without a hearing, the court entered an order directing SRPS to reinstitute payments "in the amounts currently due including the cost of living allowances and consideration for health insurance beginning with the payment of March 1, 2001 for a period of 6 months or until further Order of this Court ending September 1, 2001." The order stated also that Thompson "shall fully reimburse [SRPS] as required by [SPP § 29–118] including any and all duplicative benefit payments barring an Order to the contrary by the Pension Review System or barring resolution between the parties." Though dated February 16, the order was not entered on the docket until March 14, 2001. Before the order's entry, SRPS filed a motion to dissolve the order, which it regarded as a temporary restraining order. In that motion, SRPS alleged that Thompson had failed to exhaust his administrative remedies and that he was unable to show any likelihood of success in his demand that he receive duplicative payments that the law prohibited. Six days after the order's entry, SRPS filed an answer to the complaint, as well as an

appeal.[4]  Finally on April 30, 2001, SRPS filed a summary judgment motion and, in support, submitted an affidavit from Mr. Schaub, accompanied by various worksheets, attesting that, after the deduction of $884 for the workers' compensation benefits, Thompson had received from SRPS $123/month for the period January, 1999—June, 1999, $138/month for the period July, 1999—June, 2000, and, except for the one full payment in March, 2001, $161/month from and after July, 2000.

At a hearing held on August 3, 2001, the court denied SRPS's motion for summary judgment and granted a writ of mandamus ordering SRPS to continue making duplicative payments.  Reciting the reasoning and some of the language in the earlier Court of Special Appeals opinion, the court, fully aware of the statutory mandate, simply decided that to enforce the statute would "lead to an oppressive, absurd or unjust consequence."  An order directing SRPS to commence full payment, retroactive to April, 2001, was entered August 21, 2001.  SRPS noted an appeal and sought a stay in the Court of Special Appeals.  When that court denied the stay, SRPS sought *certiorari* and a stay in this Court.  We granted both requests.

## DISCUSSION

### Exhaustion of Administrative Remedy

SRPS is subject to the contested case provisions of the Administrative Procedure Act. *See* Maryland Code, § 10–202(b) of the State Government Article and SPP, § 21–111(b). Under the State Government Article (SG) provisions, SRPS is required, (1) to adopt regulations governing procedures under the APA and practice before the agency (SG § 10–206(b)), (2) to give reasonable notice of the agency's action or proposed

---

4.  It appears from conversations at the hearing ultimately held on SRPS's various responses that, without opposition from Thompson, the Court of Special Appeals temporarily stayed the temporary restraining order pending the appeal and that only one full duplicative payment was made under it—that of March, 2001.

action (SG § 10–207), and (3) to afford the opportunity for a hearing and give reasonable written notice of the time, place, and nature of the hearing and of the rights and procedures applicable to the hearing (SG § 10–208). In conformance with SG § 10–206(b), SRPS has adopted regulations governing APA hearings. *See* COMAR 22.03.04.

When SRPS first acted to set off Thompson's workers' compensation benefits against his disability retirement benefits, it gave no notice of its intent to do so and gave no notice of any right to a hearing. It was on that basis that the Court of Special Appeals held that Thompson's direct resort to court was not inappropriate. Whether that decision was right or wrong is of no moment at this point. For one thing, SRPS did not seek review in this Court; for another, more recent events have made that determination moot. In May, 1998, through Schaub's letter, SRPS clearly informed Thompson not only of SRPS's intent to recommence the setoff but of its intent to recoup the overpayments noted in the letter. As we observed, that letter also advised Thompson that he "may have the right to request an administrative appeal of the Agency's decision to offset [his] retirement benefits."

The first, and only, response to that letter came fifteen months later, when counsel for Thompson wrote to Mr. Vaughn, SRPS's Executive Director, to "request the assistance of [his] office" in "continuing" Thompson's full payments. After stating the basis for his request, counsel advised that "[s]hould [SRPS] refuse relief," Thompson would be "left with no choice other than to return to Court." The responsive letters from Mr. Vaughn and the Assistant Attorney General clearly left open the prospect of further administrative proceedings.[5] The question, then, is what kind of administrative remedy was available?

---

5. As we observed, Mr. Vaughn's letter advised that only a "ruling by the Board of Trustees or a court order" could stop the setoff. The Assistant Attorney General's letter enclosed a copy of the relevant regulations of the Board of Trustees and stated that Schaub's earlier letter "and this letter" provided notice of "the administrative remedies that *[Thompson]*

COMAR 22.03.04.07 deals with requests for hearings before the Board of Trustees. Section A states that the Board may order hearings whenever it considers them necessary for the performance of its duties and that the Board may either hold a hearing itself, in conformance with COMAR 22.03.04.08 or may refer the matter to the Office of Administrative Hearings (OAH) pursuant to COMAR 22.03.04.09. Section B of CO-MAR 22.03.04.07 provides that a claimant may request a hearing by submitting a petition to the Executive Director. The petition must be in writing and state certain specified information under oath. Section B(3)(a) states that the Executive Director shall grant or deny the claimant's request for hearing; if he grants the request, § B(3)(b) requires that he notify the claimant and refer the petition to OAH for a hearing under COMAR 22.03.04.09.[6] If the Executive Director denies the claimant's request for hearing, he must notify the claimant and advise the Board of the reasons for the denial. The Board may then either ratify the Executive Director's decision or reverse it and grant the request for hearing.

■ When an administrative agency has either primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily exhaust their administrative remedies before seeking a judicial resolution, *State v. State Board of Contract Appeals,* 364 Md. 446, 457, 773 A.2d 504, 510 (2001), and a conclusion that the plaintiff failed to do so normally results in a dismissal of the action, either by the trial court initially or by direction of an appellate court. *Id.* at 458–59, 773 A.2d at 511–12. *See also Board of License Comm'rs v. Corridor Wine, Inc.,* 361 Md. 403, 761 A.2d 916

---

*may pursue* to prevent the offset of his disability retirement benefits." (Emphasis added).

**6.** It would appear that COMAR 22.03.04.07B(3)(b) is inconsistent with COMAR 22.03.04.07A. Section B(3)(b) seems to require that the hearing be before OAH if the petition is granted by the Executive Director. Section A, however, states that a majority of the Board shall determine whether the hearing is to be before the Board or referred to OAH. The discrepancy—one of many in this case—is of no consequence here.

(2000); *Quesenberry v. WSSC,* 311 Md. 417, 535 A.2d 481 (1988). That is because, although the court may well have subject matter jurisdiction over the action before it, the exhaustion doctrine bars the court from exercising that jurisdiction, thereby gratifying the paramount legislative intent that the matter be dealt with first by the Executive Branch agency. *See Board of Educ. for Dorchester County v. Hubbard,* 305 Md. 774, 787, 506 A.2d 625, 631 (1986) ("While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question.") (emphasis in original).

Although counsel's letter of August 19, 1999 did contain most of the information required of a petition for hearing, it was not under oath, as the regulation requires, and it did not actually ask for a hearing by either the Board or OAH, but only for consideration by the Executive Director. The Executive Director clearly did not regard that letter as a petition for hearing by the Board, as, through counsel, Thompson was informed that some further action on his part would be needed to trigger consideration by the Board. Despite that advice, Thompson took no further action. There was, accordingly, never any request for a hearing, either before the Board or before OAH. Instead, a year-and-a-half later, Thompson returned directly to court with a petition for mandamus.

█ Given that circumstance, there is not even a pretense here of any valid attempt by Thompson to pursue the administrative remedy that was available to him. Although it may be arguable that, under the statutory procedures embodied in the APA, the Board could not have denied Thompson a hearing if he had properly requested one, despite the discretion seemingly allowed in the COMAR regulation, the matter never got that far. He was not denied a hearing because he never properly requested one. There was, in short, a clear failure to exhaust an available administrative remedy, and the Circuit

Court, as a result, never should have entertained his petition for mandamus.

### The Merits

■ Having concluded that Thompson failed to exhaust an available administrative remedy, we would normally end our opinion with a reversal on that ground. In rare circumstances, however, when the lower court has entered a ruling on the merits that we regard as substantively erroneous, we have addressed that ruling as well. *See Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 199, 707 A.2d 829, 834 (1998). This is the kind of case in which that ought to be done. The question of whether a court, in an effort to be kind to a litigant, can order SRPS to violate a statutory mandate aimed at precluding duplicative payments for the same injury, is obviously an important one, for if courts can do that on an *ad hoc* basis, they can affect the solvency of the retirement system, upon which tens of thousands of current and former State and local government workers rely. Here, the Circuit Court knowingly entered such an order in direct contravention of the statute, not once but twice, and, on the earlier occasion, that order was affirmed by the Court of Special Appeals.

A form of preclusion against duplicative disability benefits for State and local government employees was part of the initial workers' compensation law enacted in 1914. Section 34 of that enactment (1914 Md. Laws, ch. 800) made State and local government employees who engaged in hazardous occupations subject to the Act but provided that, "[w]henever and so long as by State law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Act is made for municipal employe[e]s injured in the course of employment such employe[e]s shall not be entitled to the benefits of this Act." In 1964, however, this Court construed that provision, then codified as § 33 of Article 101, not as providing for a coordination of *benefits*—a credit against workers' compensation benefits for disability benefits paid pursuant to an alternative plan—but rather as an authority for

State or local governments to exclude themselves entirely from carrying workers' compensation insurance if they enacted their own laws providing benefits that were at least equal to those provided by the workers' compensation law. *See Montgomery County v. Kaponin,* 237 Md. 112, 115, 205 A.2d 292, 294 (1964). *See also Aravanis v. Eisenberg,* 237 Md. 242, 251 n. 1, 206 A.2d 148, 153 n. 1 (1965). If the retirement plan failed to provide equivalent benefits, however, as we held was the case in *Kaponin,* the employee was entitled to the workers' compensation benefits, regardless of whether he or she was also entitled to benefits under the retirement plan. The comparison, in other words, was to be "a law by law examination and not a case by case examination." *Kaponin, supra,* at 115, 205 A.2d at 294.

In 1970, as part of a general broadening of workers' compensation coverage, the Legislature repealed § 33, but in 1971 reenacted it, as an emergency measure, to do what Montgomery County, in *Kaponin,* thought the original law did—allow a credit against workers' compensation benefits for benefits paid by government employers under an alternative plan. *See* 1970 Md. Laws, ch. 741 (repealing § 33); 1971 Md. Laws, ch. 785 (enacting a new § 33). The 1971 law, which was the immediate precursor to LE § 9–610, provided that, whenever, pursuant to any law or policy, a government employer furnished benefits to its employee, those benefits would satisfy the employer's obligation for benefits under the workers' compensation law. Under that scheme, because the retirement benefit discharged the obligation, up to the amount of it, for workers' compensation benefits, the effective adjustment was made to the workers' compensation benefit rather than the retirement benefit. The Workers' Compensation Commission was charged with determining whether a benefit provided by the employer was equal to or better than the benefit authorized by the workers' compensation law and with making appropriate awards to account for any differences.

In 1977, the Legislature sought to reverse that procedure by repealing those provisions of § 33 and providing, instead, for a reduction in the alternative pension benefit. The bill to

achieve that result was amended, however, to leave § 33 intact and to provide for the reduction in the pension benefit only with respect to the three then-current State pension plans— the State employees pension plan (Article 73B, § 11), the State teachers pension plan (Article 77, § 195), and the State police pension plan (Article 88B, § 53). *See* 1977 Md. Laws, ch. 911. That, essentially, is the scheme still in effect, now provided for by SPP § 29–118(b)(1). The reductions in disability retirement benefits apply only to SRPS, which administers the three former plans for State employees, teachers, and State police (SPP § 29–103); as to other government employees, the coordination of benefits is done through credits against the workers' compensation benefits (LE § 9–610). SPP § 29–118(b)(1) provides:

"The Board of Trustees shall reduce a disability retirement benefit by any related workers' compensation benefits paid or payable after the effective date of retirement if the workers' compensation benefits: (i) are paid or payable while a pension is paid or payable; and (ii) are for an accidental personal injury or occupational disease arising out of and in the course of the retiree's employment by a participating employer."

There do not appear to be any reported appellate decisions dealing with SPP § 29–118(b)(1), although there are several that have involved LE § 9–610 or its immediate precursor. In *Nooe v. City of Baltimore,* 28 Md.App. 348, 349, 345 A.2d 134, 135 (1975), the Court of Special Appeals construed then-Article 101, § 33 as expressive of the legislative policy that "an employee of the government shall not receive workmen's compensation benefits in addition to other benefits furnished by the employer accruing by reason of an accidental injury arising out of and in the course of employment." In conformance with that view, it affirmed a determination of the Workers' Compensation Commission that Mr. Nooe, a Baltimore City police officer who had been injured and disabled in the line of duty, was not entitled to any workers' compensation benefits because the City's pension plan provided greater benefits for that disability.

In *Mazor v. State Dep't of Correction*, 279 Md. 355, 360–64, 369 A.2d 82, 86–89 (1977), we followed the reasoning of *Nooe* and concluded that, (1) the requirement that retirement benefits be credited against workers' compensation benefits was not unconstitutional for any of the reasons asserted by Mazor, (2) the credit was not limited to cases in which the employee died, and (3) the employer's compensation insurer was also entitled to the credit. A year later, in *Feissner v. Prince George's County*, 282 Md. 413, 421, 384 A.2d 742, 747 (1978), we held that the setoff applied as well to attorneys' fees ordered by the Workers' Compensation Commission—that "because the offset provision operates to satisfy and discharge in full the workmen's compensation liability of the employer, there comes into existence no fund on which the attorney's lien ... can attach...."

In *Frank v. Baltimore County*, 284 Md. 655, 660–61, 399 A.2d 250, 254 (1979), we concluded that the setoff applied even though the alternative retirement plan was a contributory one, not funded entirely by the employer. We construed § 33 as indicative that "the General Assembly wished to provide only a single recovery for a single injury for government employees covered by both a pension plan and workmen's compensation." *Id.* at 659, 399 A.2d at 253. *See also Newman v. Subsequent Injury Fund*, 311 Md. 721, 537 A.2d 274 (1988); *Fikar v. Montgomery County*, 333 Md. 430, 635 A.2d 977 (1994); *Polomski v. Mayor of Baltimore*, 344 Md. 70, 684 A.2d 1338 (1996); *Blevins & Wills v. Baltimore County*, 352 Md. 620, 724 A.2d 22 (1999), expressing the same view.

The intention manifest in former Article 101, § 33, current LE § 9–610, applies as well to SPP § 29–118(b)(1)—a single recovery for a single injury for government employees covered by both workers' compensation and a pension or retirement plan providing equivalent disability benefits. The statute could not be more clear—SRPS "shall reduce" the disability retirement benefit. The Legislature has provided no exception to that requirement by reason of the claimant's poverty or the court's sympathy.

In attempting to justify his request for continued payment of duplicative benefits, Thompson has trotted out, from time to time, the prospect of a lump sum settlement of his workers' compensation award, and that prospect seems to have intrigued both the Circuit Court and the Court of Special Appeals. It is a prospect without meaning, however. For one thing, it appears that, after more than five years of negotiations, Thompson has yet to come even close to arranging for a lump sum settlement—we were informed at oral argument that the parties are still $680,000 apart, Thompson demanding $690,000 and IWIF offering no more than $10,000. Apart from that, the fact is that, although, in the event of such a settlement, the Board of Trustees may well have to figure out how to apply the setoff, it is wholly impermissible for a court to order duplicative payments in the hope that a settlement may, some day, be forthcoming.

For these reasons as well, the court should have dismissed the complaint for mandamus.

JUDGMENT OF CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS COMPLAINT; EACH PARTY TO PAY OWN COSTS.