Dear J. Michael Hopkins Acting Executive Director
Prompted by questions from the Legislative Auditor, your predecessor asked for our opinion about the extent to which the Maryland Racing Commission (the "Commission") may delegate administration of two funds established under the Maryland Horse Racing Act. With respect to administration of the Maryland-Bred Race Fund, which subsidizes races and related awards involving thoroughbred horses bred in Maryland, the Commission has assigned certain functions to the Maryland Horse Breeders Association, Inc. ("MHBA"). With respect to the Maryland Standardbred Race Fund, which subsidizes races and related awards involving standardbred horses bred in Maryland, the Commission has assigned similar functions to an administrator-a staff position that the Commission has created by regulation.
For the reasons stated below, it is our opinion that the Commission may delegate administrative and ministerial duties related to the Maryland-Bred Race Fund to the MHBA, in light of functions assigned to that entity by the Legislature. The delegation of similar duties with respect to the Maryland Standardbred Race Fund to an administrator employed by the Commission is also permissible. In either instance, the Commission may not delegate discretionary functions specifically assigned to the Commission by statute. For example, the MHBA and the administrator may devise schedules of races subsidized by the respective funds, but those schedules are subject to the Commission's approval.
 I The Bred Funds
The General Assembly has created two funds (collectively referred to as the "Bred Funds") under the auspices of the Commission to promote, respectively, the thoroughbred and standardbred (harness) industries in the State.
A. Maryland-Bred Race Fund
The Maryland-Bred Race Fund was created in 1962. Chapter 137, Laws of Maryland 1962, now codified at Annotated Code of Maryland, Business Regulation Article ("BR"), §§ 11-529 through 11-541. Each thoroughbred track in Maryland must allocate certain percentages of the parimutuel pools for its races to the Fund.[1] The Fund may also receive money from other sources. See, e.g., B.R. §§ 11-804
(payments derived from bets made on out-of-state races); 11-804.1 (payments received with respect to the simulcasting of standardbred races in Maryland to other jurisdictions).[2]
The Maryland-Bred Race Fund provides financial support for the "Maryland-Bred Race Program," a series of races in which only thoroughbred horses bred in Maryland may participate.[3] Each thoroughbred track is to provide for the running of such races as part of that program. B.R. § 11-536. In order to be eligible for those races, a horse must be registered with the MHBA, a private entity. B.R. § 11-537. The criteria for such registration with the MHBA are established by statute. B.R. § 11-538.[4] An owner or breeder aggrieved by an MHBA decision not to register a horse may appeal that decision to the Commission. COMAR 09.10.01.49B.
B. Maryland Standardbred Race Fund
The Maryland Standardbred Race Fund (the "Standardbred Fund"), a similar fund for harness racing, was created in 1971. Chapter 771, Laws of Maryland 1971, now codified at B.R. §§ 11-623 through11-636. Like the thoroughbred tracks, harness tracks are required to forward to the Fund designated percentages of the takeout and the breakage from each parimutuel pool. B.R. §§ 11-613(a)(2)(i), 11-615(a), 11-617(b). Also, like the Maryland-Bred Race Fund, the Standardbred Fund may receive monies from other sources, as well. See B.R. § 11-403(a)(8) (distributions from Special Fund consisting of various fees and taxes); B.R. § 11-804 (payments derived from bets made on out-of-state races); B.R. § 11-804.1 (payments received with respect to the simulcasting of standardbred races in Maryland to other jurisdictions).
The Standardbred Fund provides financial support for two racing programs that include races run at each of the harness tracks in the State. B.R. § 11-631. First, the Foaled Stakes Program is a series of races in which only standardbred horses foaled (born) in Maryland may compete. To be eligible for those races, a horse must be registered with the Maryland Standardbred Race Fund Advisory Committee, an entity created by statute. B.R. §§ 11-625,11-632. The statutory registration criteria are similar to those for the Maryland-Bred Race Fund. B.R. § 11-632. An owner or breeder may appeal to the Commission from a refusal of the Advisory Committee to register a horse. COMAR 09.10.02.43D.
Second, the Sires Stakes Program is a series of races in which only standardbred horses sired by Maryland stallions may participate. For a horse to be eligible for those races, the horse's sire (father) must be registered with both the Advisory Committee and the United States Trotting Association, and certain other criteria must be satisfied. B.R. § 11-633.[5] A denial of registration by the Advisory Committee may be appealed to the Commission. COMAR 09.10.02.53H.
C. Administration of the Bred Funds
The Legislature has charged the Commission with administering the Bred Funds. B.R. §§ 11-535(a)(1), 11-629(a)(1). With respect to each fund, the Commission is to rely on the "help and advice" of an Advisory Committee consisting of representatives from various segments of the pertinent racing industry. Id.[6] The Commission is to deposit with a bank or trust company the monies allocated to the Bred Funds, and to ensure that those funds are secured by collateral. B.R. §§ 11-535(b), 11-629(b). Payments may be made from the Bred Funds only upon order of the Commission. B.R. §§ 11-535(a)(2), 11-629(a)(2).
On the recommendation of the respective Advisory Committees, the Commission is to set the parameters for the race programs supported by the Bred Funds-i.e., the Commission is to determine the number of races in each program and, for each race, the amount of the purse, the date of the race, the distance, and the amount of the breeder's awards. B.R. §§ 11-539(a)(1)-(5), 11-634(b)(1)-(5). In addition, the Commission is to set "any other condition necessary to carry out the purpose" of the Bred Fund races. B.R. §§ 11-539(a)(6),11-634(b)(7).[7]
We understand that the Commission relies on the MHBA for administration of the programs supported by the Maryland-Bred Race Fund. In particular, the Commission looks to the MHBA to ensure that registered thoroughbreds meet the requirements for Maryland-bred horses; to oversee the deposit of monies into the Fund's bank account; to calculate and distribute awards from the Fund; to maintain records of payments from the Fund; and to coordinate the race schedule for the Maryland-Bred Race Program. Pertinent to the functions performed by the MHBA, the Commission has adopted a regulation that governs the day-to-day administration of the Maryland-Bred Race Fund.
That regulation details the allocation of the Fund to race purses, owner's awards, breeder and stallion awards, and other purposes related to Maryland-bred thoroughbreds. COMAR 09.10.01.49A, C, F-P.
Under that regulation, the MHBA receives 5% of all monies allocated to the Maryland-Bred Race Fund, after the deduction of prescribed amounts, as compensation for administration of the Fund. COMAR 09.10.01.49D. The regulation also requires that the MHBA render a satisfactory accounting to the Commission of monies it receives. COMAR 09.10.01.49E.
With respect to the Standardbred Fund, the Commission has adopted regulations governing registration of standardbred horses, for the Foaled Stakes and Sired Stakes programs, eligibility of horses to start in Fund races, the amount and distribution of purses and breeder awards, and related matters. COMAR 09.10.02.43, .53. The regulations also provide for the appointment by the Commission of an administrator to supervise the daily operation of the Standardbred Fund. COMAR 09.10.02.54-1. The administrator is to be selected by the Advisory Committee, but serves at the pleasure of the Commission, which also determines the administrator's compensation and benefits. Id.
Currently, the administrator works from an office at Rosecroft Raceway where she oversees the collection of revenue due the Standardbred Fund,[8]
verifies eligibility of participants in Standardbred Fund races, generates lists of eligible horses, supervises certain aspects of the races, and calculates and distributes awards from the Fund. In addition, the administrator inspects Maryland breeding farms and their horses and performs other duties to ensure that horses being registered to participate in Standardbred Fund races satisfy the statutory criteria. Seewww.msrfonline.com/pages/About_MSRF.htm (Standardbred Fund website).
D. Legislative Audit
During a recent audit of the Commission, the Legislative Auditor questioned whether the Commission had delegated its responsibilities for the Bred Funds contrary to State law. The Legislative Auditor recommended that the Commission assume responsibility for administering the Funds "unless an Opinion from the Office of the Attorney General is obtained that supports the delegation of administering the Funds to private entities."
 II Analysis
A. Delegation of Authority by an Administrative Agency
It is not unusual for the Legislature to delegate a measure of governmental power to a private organization.[9] See 71 Opinions of the Attorney General 189, 190-93 n. 2 (1986). Nevertheless, it is also a general principle of administrative law that an administrative agency cannot, in the absence of express legislative authorization, delegate its statutory powers or functions such that it abdicates the exercise of discretion or judgment in favor of that of a private entity. Opinion No. 94-050 (October 5, 1994) (unpublished). "This nondelegation doctrine arises largely from concern for the loss of public accountability that would result from the relinquishment by an administrative agency of its powers and functions to a private entity." 73 Opinions of the Attorney General 295, 302 (1988); see also Perot v. Federal Election Commission,97 F.3d 553, 559 (D.C. Cir. 1996) (when the legislature specifically vests an agency with authority to administer a statute, the agency may not shift that responsibility to a private actor).
Even within an agency, the delegation of authority may be restricted in some instances. See Quesenberry v. Washington Suburban Sanitary Commission, 311 Md. 417, 425, 535 A.2d 481 (1988) (official specifically charged with making a quasi-judicial administrative decision could not delegate ultimate responsibility for that decision within the agency). In other instances, a board or commission may not delegate discretionary functions specifically conferred on it by the Legislature without providing prior instruction and subsequent review of the exercise of the delegated authority. See 61 Opinions of the Attorney General 734 (1976) (delegation by Board of Public Works to its administrator); 50 Opinions of the Attorney General 180 (1965) (delegation by Board of Trustees of State Colleges to its administrative assistant).
However, these limitations on delegation do not mean that an agency may not delegate administrative duties that are ministerial in nature. 61 Opinions of the Attorney General at 736; see also 73 C.J.S. Public Administrative Law and Procedure, § 56, pp. 513-15; Krug v. Lincoln Nat. Life Ins. Co., 245 F.2d 848, 853 (5th Cir. 1957). Express statutory authority is not required for the delegation of such authority, and legislative intent to permit delegation within an agency may be inferred. EEOC v. Raymond Metals Products Co., 385 F. Supp. 907, 921-22
(D.Md. 1974), aff'd in part and rev'd in part on other grounds,530 F.2d 590 (4th Cir. 1976). In short, the delegation of ministerial duties is permitted when it is not inconsistent with the enabling statute.
Finally, the grant of broad rulemaking authority to an agency may be a source of authority for delegation of some of its functions. Fleming v. Mohawk Wrecking and Lumber Co., 331 U.S. 111, 121-22 (1947); District of Columbia v. White, 435 A.2d 1055, 1056-57 (D.C.App. 1981).
Applying the general principles outlined above, we think the Commission may delegate many of its duties with respect to administration of the Bred Funds.
B. Administration of Maryland-Bred Race Fund by MHBA
In the legislation establishing the Maryland Bred Race Fund, the General Assembly delegated to the MHBA the administrative function of assessing the qualifications of thoroughbred horses and registering them to participate in the Maryland-Bred Race Program. It seems a logical division of labor for the same entity to make the initial determination of other details of the program. Thus, the Commission may rely on the MHBA to assist with other functions related to the Maryland Bred Race Program. The MHBA may propose when the Bred Fund races are to be run, how many there shall be, the distance provisions for such races, the purses, and the amounts of the breeders' awards assigned to each race.
The Commission's regulation reflects the agency's longstanding administrative construction of the Bred Fund statutes, which gives rise to a strong presumption that its construction is correct. Lussier v. Maryland Racing Commission, 343 Md. 681, 696-97, 684 A.2d 804 (1996). Moreover, the actions of the MHBA regarding the administration of the Maryland-Bred Race Fund are also subject to the review of the Advisory Committee, which is directed by statute to help and advise the Commission. B.R. §§ 11-531 through 11-534.
In our view, the Commission's delegation to the MHBA is permissible if the Commission provides the necessary prior instruction to the MHBA and retains final authority with respect to those decisions that the Legislature specifically assigned to the Commission. For example, the Commission may delegate to the MHBA the task of arranging a schedule of Fund-supported races and, in accordance with the Commission's regulations, computing the awards and other payments due from the Fund. For that purpose, the Commission has set forth in regulation elaborate instructions as to the criteria for the scheduling of races and the computation of awards. But the Commission must not abdicate its statutory role. The actual schedule of races and payments from the Fund must remain subject to Commission approval. The Commission must retain and exercise ultimate control over the administration of the Funds. The Commission must maintain a bank account into which funds are deposited and ensure that the funds are secured by collateral.
In sum, it is not inappropriate for the Commission to delegate ministerial functions to the MHBA, so long as it retains ultimate authority for those discretionary decisions that the Legislature has assigned to the Commission.
C. Administration of Standardbred Fund
With respect to administration of the Standardbred Fund, the Commission has by regulation created the position of administrator of the Fund.[10]
The administrator of the Standardbred Fund is appointed by the Commission, serves at the pleasure of the Commission, and is paid the salary and benefits determined by the Commission. We understand that the administrator performs duties assigned by the Commission in accordance with Commission regulations governing the Standardbred Fund. By virtually any definition, the administrator is an employee of the Commission.[11]
In an opinion issued approximately 25 years ago, Attorney General Burch recognized the need for the Commission's Harness Racing Board,[12]
which then had responsibility for the Standardbred Fund, to rely on an employee to carry out its responsibility to promote Maryland-bred racing through the Fund. See 62 Opinions of the Attorney General 755 (1977). That opinion discussed whether the statute establishing the Standardbred Fund implicitly authorized payments from the Fund for the salary and expenses of an employee to administer the Fund and to "perform the duties of planning and preparation for the races funded by it." Id. at 755. Noting that the relevant portions of the statute regarding the Fund were identical to those regarding the Maryland-Bred Race Fund and that, by law, both Funds were to be administered by the Commission, the opinion concluded that "the expenses of administration and promotion that reasonably relate to the purposes of the creation of the Fund and the advancement of standardbred racing may properly be paid out of the Fund." Id. at 756 (emphasis added).[13]
The designation of an administrator does not entail any unusual or unwarranted delegation of the Commission's responsibilities. In our view, the situation is no different than if the Commission assigned its regular staff to carry out the ministerial functions involved in administering the Fund.
Moreover, the administrator's decisions concerning administration of the Fund are subject to the review of the Advisory Committee that is designated by statute to help and advise the Commission.
So long as the Commission remains ultimately responsible for decisions as to the number, dates, and distances of races, the amounts of purses and breeder's awards, and the other responsibilities assigned to it by the General Assembly, the Commission may look to its staff to provide the necessary assistance to accomplish those purposes.
 III Conclusion
In our opinion, the Commission may delegate to the MHBA administrative and ministerial duties related to the Maryland-Bred Race Fund. Similarly, the Commission may delegate to an administrator employed for that purpose administrative and ministerial duties related to the Maryland Standardbred Race Fund. In either case, the Commission may not delegate discretionary functions assigned to it by the General Assembly without providing prior instruction and subsequent review for the MHBA and the administrator, and the Commission must retain final authority over those discretionary functions.
J. Joseph Curran, Jr. Attorney General
Bruce C. Spizler Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] In particular, the tracks are required to allocate to the Fund designated percentages of the "breakage" and "takeout" from each parimutuel pool. B.R. §§ 11-515, 11-525(d).
A parimutuel pool consists of the total amount wagered on a race. The "takeout" is the part of the parimutuel pool not returned to bettors. The "breakage" is the cumulative amount remaining after the winnings of successful bettors are rounded down to the next lowest multiple of 10 cents. B.R. § 11-101(b), (e), (l), (u).
[2] Under B.R. § 11-804, the breakage and takeout derived from bets made on out-of-state races are allocated "in a way normally applicable to parimutuel betting on racing the licensee holds." Under B.R. § 11-804.1, payments received by a Maryland track with respect to simulcasting of its races to other jurisdictions are allocated to various purposes, including the applicable Bred Fund, pursuant to an agreement between the track and other components of the racing industry.
[3] In addition, up to 5% of the Fund may be devoted to special races for horses conceived, but not necessarily foaled (i.e., born), in Maryland. B.R. § 11-535(d).
[4] In order to qualify for registration a horse must have been foaled in Maryland and one of the following criteria must be satisfied:
(1) the breeder of the horse has maintained a place of abode in Maryland for more than nine months immediately before registration;
(2) the breeder of the horse keeps breeding stock continually in Maryland;
(3) the horse was conceived in Maryland during the previous [breeding] season; or
(4) the horse's [mother] was sent to Maryland to foal and after foaling, [attempts were made to impregnate the mother] by a Maryland stallion during the season of the horse's birth.
B.R. § 11-538. According to its website, the MHBA charges a fee ranging from $50 to $300 for registration. Seewww.mdhorsebreeders.com/MdBdFn.cfm
[5] The horse's sire must have been at stud in Maryland for a full breeding season, and the offspring must have been conceived during that season. B.R. § 11-633(2)-(3).
[6] The Maryland-Bred Race Fund Advisory Committee consists of five members appointed by the Commission with the approval of the Secretary of Labor, Licensing and Regulation. One of the members must also be a member of the Commission. The other four members of the Advisory Committee are to be appointed on the recommendation of racing-related entities: two must be recommended by and be members of the MHBA; one must be recommended by the mile thoroughbred track licensees, and one must be recommended by the Maryland State Fair and Agricultural Society, Inc. (Timonium). B.R. § 11-532.
The Maryland Standardbred Race Fund Advisory Committee is also appointed by the Commission with the approval of the Secretary of Labor, Licensing and Regulation. One of the members is to be nominated by the Chairman of the Commission and be a member of the Commission. One member is to be nominated by the Chairman to represent a harness racing licensee. Two members are to be nominated by the organization representing a majority of the standardbred breeders in the State (with one being a "commercial breeder"). One member is to be nominated by the Cloverleaf Standardbred Owners Association, Inc. (a group representing a majority of the standardbred owners and trainers in the State). B.R. § 11-626.
In each case, the member of the Commission who serves on an Advisory Committee is the chairman of that Advisory Committee. B.R. § 11-533; B.R. § 11-627.
[7] In addition to these conditions, with respect to Standardbred Fund races, the Commission also is to set the nomination and registration procedures for horses, again on the recommendation of the Advisory Committee. B.R. § 11-634(b)(6).
[8] Monies allocated to the Standardbred Fund by harness track licensee are deposited into an account in the names of the Standardbred Fund and the Commission (using the Commission's tax identification number). The Commission conducts an accounting of these deposits at the end of the calendar year. A reconciliation is then made regarding any overpayment or underpayment by the tracks to the Fund.
[9] Strictly speaking, the term "delegation" typically refers to a grant of authority by a legislature to an administrative agency. See, e.g., Christ v. Department of Natural Resources, 335 Md. 427, 445,644 A.2d 34 (1994). In this opinion, we use that term to refer to the subdelegation of authority by the administrative agency to an entity or an employee.
[10] The Legislature has granted the Racing Commission broad authority to adopt rules governing horse racing in Maryland. See B.R. § 11-210. In a case involving a challenge to regulations adopted by the Racing Commission, the Court of Appeals stated that "where the Legislature has delegated such broad authority to a state administrative agency to promulgate regulations in an area, the regulations are valid under the statute if they do not contradict the statutory language or purpose." Lussier v. Maryland Racing Commission, 343 Md. 681, 688,684 A.2d 804 (1996).
[11] A popular dictionary defines "employee" as "a person hired by another, or by a business firm, etc., to work for wages or salary." Webster's New World Dictionary (2d ed.), p. 459.
We have not been asked, and therefore do not address, what other personnel laws may apply to the administrator.
[12] From 1977 to 1984, the Commission was bifurcated into the Thoroughbred Racing Board and the Harness Racing Board. See Chapter 728, Laws of Maryland 1977; Chapter 500, Laws of Maryland 1984.
[13] This opinion overruled a 1963 opinion that concluded that the statute creating the Maryland-Bred Race Fund did not authorize expenditures from that Fund to defray the expenses of an employee to promote racing supported by the Fund. See 48 Opinions of the Attorney General 372 (1963). *Page 37